358 P.2d 626

Marvin L. CLODFELTER and Louise V. Clodfelter, his wife, Bertha P. Dutton, Gilbert G. Lopez and Maria S. Lopez, his wife, Pot Creek Logging & Lumber, Inc., Romac, Inc., d/b/a Memorial Gardens, Paul Ragle, Ben Rhoda and Marjorie M. Rhoda, his wife, Howard M. Rosenthal, Russell W. Thomen and Berta O. Thomen, his wife, John E. Tiano and Marjory Moore Tiano, his wife, Earl C. Kauffman and Mrs. A. R. (Agnes Robinson) Wheelwright, Petitioners-Appellants,

v.

S. E. REYNOLDS, State Engineer, and Public Service Company of New Mexico, Respondents-Appellees.

No. 6703.

Supreme Court of New Mexico.

Jan. 4, 1961.

See also 358 P.2d 621.

Richard H. Robinson, Santa Fe, for petitioners-appellants.

C. R. McIntosh, Santa Fe, Keleher & McLeod, John B. Tittmann, Albuquerque, for respondents-appellees.

CHAVEZ, Justice.

This is an appeal from the district court of Santa Fe County, New Mexico, and involves the same facts as in cause No. 6675, although a separate appeal. It originally arose in the district court as an appeal by certain protestants from a decision of the State Engineer rendered upon the application of Public Service Company of New Mexico for a permit to drill a well within the declared boundaries of the Rio Grande Underground Water Basin, to change the point of diversion of a portion of the public water to which rights are claimed by Public Service Company under a prior declaration No. 01278 and under permit No. 1677 issued by the State Engineer.

The State Engineer held a hearing upon the application and protests and, in a memo-

randum decision, approved the application, provided that the maximum rate of production of water under the permit shall not exceed 1,000 gpm (gallons per minute); and provided further that the total amount of water appropriated in any year under all of the listed claims of right of Public Service Company, as filed in the State Engineer's office, shall not exceed 5,040 acre feet. The State Engineer found that the proposed change would not impair existing rights and granted the permit.

This cause and cause No. 6675 were consolidated for the purpose of permitting the filing of one transcript of the proceedings before the State Engineer, as a transcript in each of said causes, and for the further purpose of taking further testimony and trial on the merits, if that stage of proceedings is reached in both cases, and for no other purpose.

The district court adopted the requested findings of fact and conclusions of law of appellee, Public Service Company, holding that the diversion proposed in appellee's application would not impair the water rights of any of protestants, and rendered judgment for appellee. From this judgment protestants appeal.

On this appeal, the parties will be referred to as they appear in the record, protestants as appellants and Public Service Company as appellee.

Appellee's water rights were acquired as follows:

| | | |
|---|---|---|
| (a) Right perfected prior to March 19, 1907, as per Declaration No. 01278 of owner on file | | 1,540 ac. ft. |
| (b) Under State Engineer's Permit No. 1677 | | 3,500 ac. ft. |
| | Total per annum | 5,040 ac. ft. |

Appellee's application to change the partial point of diversion sets out the reason therefor as follows:

"The above mentioned surface rights in time of drought do not produce sufficient water to meet the present demands, which demands are rapidly increasing each year."

The application also sets forth that the water diverted from the proposed well will be used, along with available surface water, for municipal supply within the area of the city of Santa Fe.

The declarations on file in the State Engineer's office, which are part of the record, by which appellee claims rights to divert the public waters of the state by the pumping of wells are:

| Declaration No. | Rate-gpm | Amount a.f./annum | Date of initial beneficial use |
|---|---|---|---|
| RG–1113 | 300 | 483 | 2/10/46 |
| RG–1114 | 50 | 80 | 10/21/50 |
| RG–1115 | 450 | 725 | 2/1/51 |
| RG–1116 | 430 | 693 | 2/21/51 |
| RG–1117 | 650 | 1,048 | 4/23/51 |
| RG–1118 | 1,200 | 1,935 | 12/28/51 |
| | 3,080 | 4,964 | |

Appellee's Exhibit No. 26 shows that the production capacity of these wells has de-

clined to a present total of 3,384,000 gallons per day, or 2,350 gallons per minute. Each of the above listed declarations sets forth that water has been used:

"As and when needed to supplement the Company's main source of supply for City of Santa Fe, located in Santa Fe Canyon, under Permit No. 1677 and Old Water Right declared, * * *."

At no time have any of the above wells been used to supply any part of demands in excess of 5,040 acre feet per year, and the testimony of appellee's witness, Malcolm Heffleman, indicates that it has been the practice of appellee to begin pumping well water for use in the city of Santa Fe when the amount of water in storage in the company's reservoirs on Santa Fe River has dropped to 500,000,000 gallons (1,530 acre feet). Also, according to the demand distribution curve set forth in Figure 34 of the report in evidence entitled, "Geology and Ground Water Resources of the Santa Fe Area," by Zane Spiegel and Brewster Baldwin, the requirement during the seven-month period from April through October would amount to 3,625 acre feet, if the annual demand amounted to 5,040 acre feet. Appellee's existing wells can produce only 2,210 acre feet, or 1,415 acre feet less than the April through October demand, during a seven-month period.

The State Engineer approved appellee's application provided that the maximum rate of production of water under the permit to be issued under said application shall not exceed 1,000 gallons per minute; and provided further that the total amount of water appropriated in any year under appellee's Declaration No. 01278, Permit No. 1677, Declarations Nos. RG–1113, RG–1114, RG–1115, RG–1116, RG–1117, RG–1118, and Permit No. 304 (application involved in this suit), shall not exceed 5,040 acre feet per year.

Appellee's application sets out the following pertinent matters:

(a) That appellee is under franchise to the city of Santa Fe to furnish an adequate supply of water for industrial and domestic needs, and to provide for the reasonably to be anticipated city growth and resulting increased needs.

(b) That appellee's water rights were acquired:

(1) Under Declaration No. 01278     1,540 ac. ft.
(2) Under State Engineer's Permit
     No. 1677                       3,500 ac. ft.
            Total per annum     5,040 ac. ft.

(c) That the above mentioned rights in time of drought do not produce sufficient water to meet the present demands, which demands are rapidly increasing each year.

(d) That the water diverted from the proposed well will be used, along with available surface water, for mu-

nicipal supply within the area of the city of Santa Fe.

The record also shows that the State Engineer, under his statutory authority, issued an order declaring the boundaries of the Rio Grande Underground Water Basin on November 29, 1956.

■ Appellants first contend that there is no statutory authority for the granting of an application such as involved in this case by the State Engineer, or by any other official, apparently upon the theory that statutory authority is necessary for a change of the point of diversion from surface waters to underground waters. We have two statutory provisions utilizing procedures to be followed in changing the point of diversion. Section 75-5-23, N.M.S.A., 1953 Comp., provides:

"75-5-23. Change of purpose—Change of point of diversion.—An appropriator of water may, with the approval of the state engineer, use the same for other than the purpose for which it was appropriated, or may change the place of diversion, storage, or use, in the manner and under the conditions prescribed in sections 151-131 and 151-156 as amended herein [75-5-3, 75-5-22], Provided that no such change shall be allowed to the detriment of the rights of others having valid and existing rights to the

68 N.M.—5

use of the waters of said stream system."

Section 75-11-7, N.M.S.A., 1953 Comp., provides:

"75-11-7. Change of location of well—Change in use on application—Temporary change—Hearing.—The owner of a water right may change the location of his well or change the use of the water, but only upon application to the state engineer and upon showing that such change or changes will not impair existing rights and to be granted only after such advertisement and hearing as are prescribed in the case of original applications. * * *"

In Application of Brown, 65 N.M. 74, 332 P.2d 475, 477, involving an application for permit to change the location of a well, this court, speaking through Chief Justice Lujan, said:

"Statutes governing a change in point of diversion or a change in well location do not grant; rather they restrict the right of an appropriator to change his point of diversion or well location. Martz, Cases on Natural Resources p. 246 (1951). In the absence of statutory procedures to effectuate such changes, the water user may change his point of diversion or well location at will, *subject to the requirement that other water users will not be*

*injured thereby.* Lindsey v. McClure, 10 Cir., 1943, 136 F.2d 65."

Mr. Justice Phillips, a distinguished member of the New Mexico Bar, who later became Chief Judge of the Tenth United States Circuit Court of Appeals, speaking for the Tenth Circuit Court, after setting out that New Mexico and Colorado have the same basic water laws, construed our Sections 151–101 to 151–178, N.M.S.A., 1929 Comp., in Lindsey v. McClure, 10 Cir., 1943, 136 F.2d 65, 69, and stated:

"In 1907, New Mexico adopted a comprehensive statute on the law of waters. Ch. 49, N.M.S.L.1907, §§ 151–101 to 151–178, N.M.S.A.1929. The statute codifies the Colorado doctrine, prescribes the procedure for effecting appropriations through applications for permits made to and granted by the state engineer, and provides for the issuance by the state engineer, upon the completion of the physical works and the application of the water to beneficial use, of a license to appropriate water.

"Section 45 of ch. 49, supra, as amended by § 18, ch. 126, N.M.S.L. 1941, provides that an appropriator of water may, with the approval of the state engineer, change the place of diversion, storage, or use where such changes can be made without detriment to existing rights."

The court then stated the principle as follows:

"However, a water right is a property right and inherent therein is the right to change the place of diversion, storage, or use of the water if the rights of other water users will not be injured thereby. Hence, the statutes above referred to are a recognition rather than a grant of the right to make such changes and they merely lay down a procedure whereby it may be determined whether such changes can be effected without injuriously affecting the rights of other users."

In Colorado, through a long line of decisions, it is definitely established that the right to change the point of diversion, or place of use, of water which has been obtained as a result of an appropriation, is one of the incidents of ownership, and existed and was exercised in Colorado long before any remedial statute was enacted. Lower Latham Ditch Co. v. Bijou Irr. Co., 41 Colo. 212, 93 P. 483, 484.

We hold against appellants under their point I.

Appellants, under point II, claim that appellee has not perfected its claim to 5,040 acre feet and, therefore, that these claimed rights have not ripened into absolute rights. Suffice it to say that appellee's application is to transfer a portion of their claimed rights under Permit No. 1677 and Dec-

laration No. 01278, and appellee concedes that the State Engineer should not permit withdrawals from the well, which is the subject of the application in this case, at a rate in excess of 1,000 gallons per minute, which would produce 1,612 acre feet per annum if pumped continuously for twenty-four hours per day for 365 days in each year.

██ Appellee requested and the district court found that:

"Applicant-appellee is the owner of appropriative water rights to divert and use the surface flow of Santa Fe Creek, a tributary of the Rio Grande River, to the extent of 5040 acre feet per annum, of which 1540 acre feet are claimed as ancient rights initiated prior to the year 1907 with priority prior to the year 1907 under its declaration of water rights No. 01278 filed in the office of the State Engineer, and the balance, or 3500 acre feet, is claimed under permit No. 1677, application for which was made pursuant to statute to the State Engineer in the year 1926."

There is substantial evidence in the record to support such finding and it will not be disturbed on appeal.

As to appellee's claimed right to 4,243 acre feet due to the drilling of the six wells under Declarations Nos. RG–1113 to RG–1118 inclusive, there is no finding of fact involving this particular claimed right of appellee. Our ruling on this particular point is in conformity with our holding on the appeal of Public Service Company in cause No. 6675.

██ Appellants, under point III, contend that appellee had two burdens of proof: (a) that there are unappropriated waters available, and (b) that the pumping of the proposed well will not impair existing water rights of others. As to point III(a), we say that appellee's application did not attempt a new appropriation and thus there was no issue and no burden regarding unappropriated waters. As to point III (b), that the pumping of the proposed well will impair rights of others, we can only say that appellee concedes that it had the burden of establishing that the pumping of the new well will not impair existing rights. Spencer v. Bliss, 60 N.M. 16, 287 P.2d 221. However, the State Engineer is a highly qualified, able and competent engineer, acquainted with water problems. He heard the evidence and found that the diversion proposed in appellee's application will not impair the rights of any of appellants, or any other existing rights to the use of public waters. The district court also found that no prior existing rights will be impaired by the pumping of the proposed well. This was a controverted issue in the case. We have reviewed the record and hold that the dis-

trict court's findings are supported by substantial evidence.

There is no merit in appellants' point IV. Said point appears to present a proposition of law. It is sufficient answer to direct attention to the fact that the district court made the following conclusion of law, which is set up by appellants in their point IV:

"It is the function and duty of the State Engineer to regulate and supervise the appropriation, measurement and distribution of the public waters of the State and the apportionment thereof in accordance with the law, so as to prevent waste, prevent the improper location and drilling of wells and diversion of surface waters, to the end that said waters be conserved and be put to beneficial use as contemplated by law, and so as to protect the rights therein of appropriators in accordance with their priorities."

■ Appellee, in this cause, had also filed a motion to strike the entire transcript because of appellants' failure to file a certified bill of exceptions. Action on this motion was deferred pending consideration of the case on the merits. No jurisdictional ground was advanced in support of the motion and no prejudice to appellee is shown. The motion to strike is overruled. Supreme Court Rule 16(4). Armijo v. National Surety Corp., 58 N.M. 166, 268 P.2d 339.

Finding no error in the record, the judgment of the district court is affirmed.

It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.

MOISE and NOBLE, JJ., not participating.