2004-NMCA-069

94 P.3d 1

Mabel HANSON and Hanson Enterprises, Inc., Plaintiffs–Appellants,

v.

Thomas C. TURNEY, New Mexico Office of the State Engineer, Defendant–Appellee.

No. 22,851.

Court of Appeals of New Mexico.

April 1, 2004.

Peter B. Rames, Albuquerque, for Appellants.

Susanne Hoffman–Dooley, New Mexico Office of the State Engineer, Santa Fe, for Appellee.

## OPINION

BUSTAMANTE, J.

{1} NMSA 1978, § 72–12–7(A) (1985) allows the owner of a "water right" to change the use of the water. Plaintiff Mabel Hanson had two permits to appropriate water but never put the water to beneficial use. When she filed applications to change the use from irrigation to subdivision use, the State Engineer denied her requests, reasoning that her failure to put the water to beneficial use meant that there was no "water right" to be changed. Plaintiff argues that a permit to appropriate water constitutes a "water right" that can be changed even if there has been no beneficial use. We agree with the State Engineer, and affirm.

## BACKGROUND

{2} The State Engineer exercises administrative control over a particular groundwater basin by declaring it and defining its boundaries. NMSA 1978, § 72–12–1 (2003). Because the Estancia Basin is a declared basin, Plaintiff, who wished to appropriate water from this basin, had to apply for a permit to appropriate water. NMSA 1978,

§ 72–12–20 (1983); NMSA 1978, § 72–12–3 (2001). In determining whether to issue a permit, the State Engineer considers the applicant's application and grants it if there are unappropriated waters or if the proposed appropriation would not impair existing water rights from the source, is not contrary to the conservation of water within the state, and is not detrimental to the public welfare of the state. § 72–12–3(A), (E).

{3} Plaintiff acquired two permits to appropriate water for irrigation purposes. Permit number E–4859 & S was issued by the State Engineer on March 20, 1989, and Permit number E–5340 was issued on January 23, 1992. Plaintiff drilled two wells, but it is undisputed she never put the water to beneficial use. Plaintiff later filed two applications, under Section 72–12–7(A), requesting a change to subdivision use. The State Engineer denied both applications because no water had been put to beneficial use.

{4} A State Engineer Hearing Officer agreed with these decisions, and the State Engineer adopted the Hearing Officer's Report and Recommendation. Plaintiff appealed to the district court pursuant to NMSA 1978, § 72–7–1 (1971), which provides for a de novo appeal, and both parties moved for summary judgment. The court granted the State Engineer's motion, and Plaintiff appeals.

**DISCUSSION**

█ Summary judgment is proper where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

**A. Statutory Construction**

█ {6} Section 72–12–7(A) states: "The owner of a water right may change the location of his well or change the use of the water, but only upon application to the state engineer." This appeal requires us to decide the meaning of the term "water right," as used in this section. Does it include a permit to appropriate water, even when no water has been put to beneficial use, as Plaintiff contends? Or does it require the perfection of a water right through beneficial use, as

the State Engineer contends? While we agree that Plaintiff took the initial step to obtain a water right, and had a right to appropriate water, we are not persuaded that her permits alone establish that she is the owner of a "water right," as that term is used in Section 72–12–7(A).

{7} Because this presents an issue of statutory construction, and whether summary judgment is proper, our review is de novo. *See Rutherford v. Chaves County*, 2003–NMSC–010, ¶ 8, 133 N.M. 756, 69 P.3d 1199; *Self*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. When a statute is clear and unambiguous, we interpret it as written. *See State v. Jonathan M.*, 109 N.M. 789, 790, 791 P.2d 64, 65 (1990). If, however, the language of the statute is ambiguous, we must interpret the statute, and determine legislative intent. *See State ex rel. Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994). Here, the term "water right" is ambiguous, so we must determine legislative intent.

{8} We begin our analysis by recognizing that establishing a water right is a process that takes a period of time. *See State ex rel. Reynolds v. Mendenhall*, 68 N.M. 467, 473, 362 P.2d 998, 1002–03 (1961) (accepting that it may require years to commence an appropriation, drill a well, install equipment, and dig ditches, all as prerequisite to applying the water to a beneficial use); *Millheiser v. Long*, 10 N.M. 99, 106–07, 61 P. 111, 114 (1900) (noting that the building of ditches, flumes, and other works are necessary to divert water and apply it to beneficial use).

█ {9} A water permit is an inchoate right, and "is the necessary first step" in obtaining a water right. *See Green River Dev. Co. v. FMC Corp.*, 660 P.2d 339, 348–51 (Wyo.1983). It is "the authority to pursue a water right—a conditional but unfulfilled promise on the part of the state to allow the permittee to one day apply the state's water in a particular place and to a specific beneficial use under conditions where the rights of other appropriators will not be impaired." *Id.* at 348.

{10} For more than a century, our law has been that a water right is perfected by

the application of the water to beneficial use. *See Holguin v. Elephant Butte Irrigation Dist.,* 91 N.M. 398, 402, 575 P.2d 88, 92 (1977) (stating that "[t]he water right is acquired by perfecting an appropriation, i.e., by an actual diversion followed by an application within a reasonable time of the water to a beneficial use" (internal quotation marks and citation omitted)), *overruled on other grounds by C.E. Alexander & Sons, Inc. v. DEC Int'l Inc.,* 112 N.M. 89, 91, 811 P.2d 899, 901 (1991); *State ex rel. State Eng'r v. Crider,* 78 N.M. 312, 315, 431 P.2d 45, 48 (1967); *Cartright v. Pub. Serv. Co.,* 66 N.M. 64, 114, 343 P.2d 654, 689 (1958) (stating that "[n]o water right becomes vested until it has been applied to beneficial use to the full extent of its right") (Federici, J., dissenting); *First State Bank of Alamogordo v. McNew,* 33 N.M. 414, 436, 269 P. 56, 65 (1928); *Snow v. Abalos,* 18 N.M. 681, 694, 140 P. 1044, 1048 (1914) ("The intention to apply to beneficial use, the diversion works, and the actual diversion of the water necessarily all precede the application of the water to the use intended, but it is the application of the water, or the intent to apply, followed with due diligence toward application and ultimate application, which gives to the appropriator the continued and continuous right to take the water."); *Millheiser,* 10 N.M. at 106–07, 61 P. at 113–14. "Beneficial use is the basis for a water right in New Mexico." *State ex rel. Martinez v. McDermett,* 120 N.M. 327, 330, 901 P.2d 745, 748 (Ct.App.1995); *see* N.M. Const. art. XVI, § 3 ("Beneficial use shall be the basis, the measure and the limit of the right to the use of water."); NMSA 1978, § 72–12–2 (1931). Beneficial use is "the use of such water as may be necessary for some useful and beneficial purpose in connection with the land from which it is taken." *McDermett,* 120 N.M. at 330, 901 P.2d at 748 (internal quotation marks and citation omitted).

{11} We presume the legislature was aware of this significant body of water law when it enacted Section 72–12–7(A). *See State ex rel. Citizens for Quality Educ. v. Gallagher,* 102 N.M. 516, 519, 697 P.2d 935, 938 (1985) (stating that the legislature is presumed to know the laws in existence). We also presume the legislature intended that the term "water right" should be con-strued consistently with this significant body of law. If the legislature had intended a different interpretation of "water right," we would expect the legislature to have clearly expressed it.

{12} The legislature was aware of the distinction between holders of permits and owners of water rights, as shown by NMSA 1978, § 72–12–8 (2002), which provides that "the owner of a water right" or "the holder of a permit from the state engineer to appropriate any such waters" forfeits their right if the water is not applied to beneficial use. § 72–12–8(A); *see also* § 72–12–8(H) (distinguishing between the "holder of a valid water right" and a "permit to appropriate waters"). It is thus clear that if the legislature intended to treat permit holders the same as owners of water rights, it knew how to draft a statute which would successfully do so. The fact that the legislature did not do so, plus the absence of any reference to permit holders in Section 72–12–7(A), is compelling evidence that the legislature did not intend to allow permit holders who had not yet applied any water to beneficial use to be considered owners of a water right. *See Citizens for Quality Educ.,* 102 N.M. at 519, 697 P.2d at 938 (noting that, had it intended to do so, the legislature could have included language prohibiting withdrawal of signatures placed on a petition for recall, but did not do so); *Herrera v. Quality Imports,* 1999–NMCA–140, ¶ 8, 128 N.M. 300, 992 P.2d 313 (noting that the legislature is presumed to know existing law and knew how to include disability modifiers in the definition of "disability," but chose not to do so).

{13} Our conclusion is supported by *Green River Dev. Co.,* in which the Wyoming Supreme Court interpreted a statute that allowed "an owner of a water right" to change its use or place of use. There, the Court considered whether a permit to appropriate water was a "water right" when the permit waters had never been put to beneficial use. The court held that a permit "is the necessary first step" in obtaining a water right, but that without an application to beneficial use, it was not a water right itself and therefore its use could not be changed. *Id.* at 348–51.

{14} Plaintiff relies heavily on *Mendenhall*, 68 N.M. at 472–73, 362 P.2d at 1003–04, to argue that a permit to appropriate water is synonymous with a "water right." In *Mendenhall*, the appellant's predecessor in title began drilling to obtain water for irrigation in April or May 1949. Work continued until 1950 when the efforts were successful, and the water supply was used to irrigate in the crop year 1950 and beyond. However, in February 1950 the State Engineer declared the land to be within a basin. The Special Master concluded that the appellants had a valid water right with a priority date of May 31, 1949, but that because the appellants had not applied the water to beneficial use before the basin was declared, they currently had no water right. *Id.* at 468, 362 P.2d at 999.

{15} The Supreme Court reversed, holding that appellants should not be denied the benefit of their diligent efforts based solely on the State Engineer's declaration of the lands as within a basin. *Id.* at 472–73, 362 P.2d at 1002–03. The rationale for *Mendenhall* is that statutes should be construed to avoid injustice and absurd results. The Court felt it would be unfair if an appropriator were to spend years diligently drilling, installing equipment, digging ditches, and preparing land, only to have the State Engineer declare the land to be within a basin the day before the water was to be put to beneficial use, and thereby deny the appropriator the benefits of his labor. *Id.* at 473, 362 P.2d at 1002–03. In support of its holding, the Court also relied on the doctrine of relation back, which provides that an appropriator's priority date is the date he started the work necessary to appropriate and use the water, not the date the water is actually used. *Id.* at 470–72, 362 P.2d at 1001–02.

{16} It is possible to read *Mendenhall* to suggest that, in a specific and limited circumstance, an appropriator may have an enforceable water right at some time before the water has been put to beneficial use. However, we disagree that it governs the outcome here. *Mendenhall* deals with the effect of the State Engineer's declaration of a basin during the period in which the appropriator was diligently engaged in the preparations to apply the water to beneficial use. *Mendenhall* does not address whether a permit is a "water right," and does not address the precise issue here. Distinguishable on its facts and underlying rationale, *Mendenhall* does not stand for the proposition that a permit is the same as a water right.

{17} Plaintiff also relies on *Clodfelter v. Reynolds*, 68 N.M. 61, 358 P.2d 626 (1961), for the proposition that an appropriator need not "prove up" water rights before they can be transferred to another location or use. We disagree. There, the applicant had beneficially used water under a permit it had obtained thirty-five years earlier. *Id.* at 66–67, 358 P.2d at 630. Under those circumstances, the Court held that it was permissible to transfer a portion of the applicant's claimed rights to a different location, so long as the amount transferred did not exceed what the applicant had historically used. *Id. Clodfelter* is distinguishable because here Plaintiff has not beneficially used the water.

## B. Due Process

### 1. Estoppel

{18} Plaintiff argues that the State Engineer is estopped from denying her applications to change use because an earlier, similar request of hers had been granted, and because some requests by other people to change use had been granted even though they had not applied the water to beneficial use.

{19} Courts are reluctant to apply equitable estoppel against a governmental entity. *Gallegos v. Pueblo of Tesuque*, 2002-NMSC–012, ¶ 24, 132 N.M. 207, 46 P.3d 668. This appears to be true particularly where the waters of the state are involved. *See State ex rel. Erickson v. McLean*, 62 N.M. 264, 274, 308 P.2d 983, 989 (1957) (stating "[p]ublic policy forbids the application of the doctrine of estoppel to a sovereign state where public waters are involved"). Estoppel will not be applied against a state governmental entity unless "there is a shocking degree of aggravated and overreaching conduct or . . . right and justice demand it." *Wisznia v. Human Servs. Dep't*, 1998-NMSC–011, ¶ 17, 125 N.M. 140, 958 P.2d 98.

A party seeking to establish estoppel against the government must establish that

> (1) the government knew the facts; (2) the government intended its conduct to be acted upon or so acted that plaintiffs had the right to believe it was so intended; (3) plaintiffs must have been ignorant of the true facts; and (4) plaintiffs reasonably relied on the government's conduct to their injury.

*Gallegos,* 2002–NMSC–012, ¶ 24 n. 5, 132 N.M. 207, 46 P.3d 668 (quoting *Pueblo of Santa Ana v. Kelly,* 932 F.Supp. 1284, 1298, *aff'd,* 104 F.3d 1546 (10th Cir.1997)). In addition to these four factors, the plaintiff must demonstrate "affirmative misconduct on the part of the government." *Id.* (internal quotation marks and citation omitted). Finally, estoppel cannot lie against the state where the act sought would be contrary to the requirements expressed by statute. *Rainaldi v. Pub. Employees Ret. Bd.,* 115 N.M. 650, 658–59, 857 P.2d 761, 769–70 (1993).

{20} One of Plaintiff's arguments about why summary judgment should not have been granted in the State Engineer's favor is that there was a disputed factual issue concerning whether the State Engineer had a longstanding policy in the Estancia Basin of allowing a change of use only if the water had been put to beneficial use. The record discloses conflicting evidence on this point. The record also demonstrates that, whatever the State Engineer's policy may have been, it was not consistently applied. Some requests to change use were denied because there had been no beneficial use, while others were granted even though there was apparently no beneficial use. From this, Plaintiff argues that the State Engineer is estopped to deny her request.

{21} This does not meet the requirements of estoppel against the State. Less than perfect consistency may be caused by mistakes by employees or supervisors, by changes in policy, or by changes in the agency's interpretation of its governing statutes. This case appears to present a mixture of all these reasons. Under Plaintiff's view, once the State Engineer granted some requests to change use without prior application to bene-ficial use, then he could never reevaluate or change his position. Estoppel against the government would then be the rule, not the exception. Here, we have held that the State Engineer's interpretation of Section 72–12–7(A) is correct. The fact that an agency overlooked a particular requirement in one case does not estop it from enforcing the requirements in another case. *See Erickson,* 62 N.M. at 273, 308 P.2d at 989 (stating, "[t]he failure of any of these [state employees] to enforce any law may never estop the people to enforce that law either then or at any future time"). Consequently, it was appropriate for the State Engineer to follow the statute. We reject Plaintiff's attempt to require the State Engineer to grant her application solely because he had done so in some cases previously, including one of hers.

{22} Plaintiff also supports her estoppel argument claiming that "later preferential treatment [was] given to a similar application by the sitting Governor's son." Plaintiff also suggests that the application was "identical." However, the footnote in the record, on which she relies, does not establish that the application was identical or similar. Nothing in the footnote establishes that the "Governor's son" was allowed a transfer without establishing prior beneficial use. Consequently, we cannot say the application was "similar," except for the fact that it involved an application to change use. The footnote only establishes that the transfer application was ruled on within three months, much more quickly than Plaintiff's requests. Any discrepancy in the time it took to process applications does not establish a due process violation, nor does it require us to hold that the State Engineer must grant her applications.

{23} Plaintiff does not assert that the State Engineer made any affirmative misrepresentation, or establish that she relied to her detriment on any such misrepresentation. Rather, her argument is simply that the State Engineer did not have a consistent policy. Plaintiff has not established a shocking degree of aggravated and overreaching conduct or meet the requirements for estoppel against the state. Absent any showing

on these elements, it was proper for the district court not to apply estoppel.

### 2. Stay of Discovery

{24} Plaintiff claims that she was denied due process because the district court granted the State Engineer's motion to stay discovery. We review an order limiting discovery for an abuse of discretion. *See Doe v. Roman Catholic Diocese of Boise, Inc.,* 121 N.M. 738, 744, 918 P.2d 17, 23 (Ct.App.1996). Plaintiff's briefing on this point is somewhat unclear, but her argument appears to be that additional discovery might have shown that the State Engineer did not follow a consistent policy, treated different applicants differently, and allowed some applicants to change use without requiring prior beneficial use.

{25} It appears from the record that Plaintiff had specific information supporting her position, and was able to present her argument about differing treatment to the trial court. More discovery might have turned up more instances where prior beneficial use was not required. However, as we have discussed, Plaintiff fails to persuade us that less than consistent treatment of applications to change use establishes estoppel. As we have also discussed, estoppel rarely applies against the State, and public policy strongly discourages the application of estoppel against the State Engineer where the waters of the State are involved. *Gallegos,* 2002–NMSC–012, ¶ 24, 132 N.M. 207, 46 P.3d 668; *Erickson,* 62 N.M. at 274, 308 P.2d at 989. Even if Plaintiff had engaged in further discovery, and discovered more cases in which the State Engineer's action was inconsistent, we are not persuaded that it would have changed the result. Plaintiff was able to make her point. Under the circumstances here, we decline to hold that the stay of discovery violated due process. *See Doe,* 121 N.M. at 744, 918 P.2d at 23 (stating that party challenging a limitation on discovery must show an abuse of discretion and prejudice).

### 3. Delay

{26} Plaintiff suggests that a lengthy delay by the State Engineer and the court system in dealing with her applications denied her due process. Plaintiff complains that it took five years for the State Engineer to deny her applications, and another three years for the district court to decide her appeal. We share Plaintiff's concern that an administrative agency would take five years to deny a relatively simple application. However, Plaintiff has cited no authority for the proposition that delay alone would constitute a due process violation entitling her to have her applications granted. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that when no authority is cited, we assume that counsel was unable to find any in support of his or her position, and decline to review the issue).

{27} We are also concerned about the three year delay in the district court, but the record reflects no pleading filed by Plaintiff that would have called the district court's attention to the problem. Additionally, we reject this claim because we are unaware of any authority, and Plaintiff has cited us to none, holding that inordinate delay by the district court would entitle her to the relief she sought on the merits. *Id.*

### 4. Prior Notice

{28} Plaintiff makes a brief, unclear argument contending that denying her applications without prior notice violated due process. We decline to address this argument. *See Santistevan v. Centinel Bank of Taos,* 96 N.M. 734, 737, 634 P.2d 1286, 1289 (Ct.App.1980) (stating that we are not required to address unclear arguments).

{29} For these reasons, the order of the district court is affirmed.

{30} **IT IS SO ORDERED.**

KENNEDY and VIGIL, JJ., concur.