2006-NMCA-094

140 P.3d 1124

**Donna GARCIA–MONTOYA, Plaintiff–Respondent,**

v.

**PUBLIC EMPLOYEES RETIREMENT BOARD, Defendant–Petitioner.**

No. 25,203.

Court of Appeals of New Mexico.

June 30, 2006.

Daniel Yohalem, Santa Fe, NM, for Respondent.

New Mexico Public Employees Retirement Association, Maryanne Reilly, Assistant General Counsel Santa Fe, NM, for Petitioner.

## OPINION

ALARID, Judge.

{1} Defendant–Petitioner Public Employees Retirement Board (the PERB) appeals from an order of the district court directing the PERB to calculate the pension benefits due Plaintiff–Respondent Donna Garcia–Montoya (Employee) under general member coverage plan 3 of the Public Employee's Retirement Act (the PERA), NMSA 1978, ch. 10, art. 11. We affirm the decision of the district court.

## BACKGROUND

{2} The operative historical facts are not disputed. Employee became a member of the Public Employees Retirement Association in August 1983. The PERA general member coverage plan 2 became applicable to state general members after September 30, 1987. NMSA 1978, § 10–11–21 (1987). The PERA general coverage plan 3 became applicable to state general members in the first full pay period after July 1, 1995. NMSA 1978, § 10–11–26.1 (1994). There is no dispute that Employee was a contributing member on the dates that both plan 2 and plan 3 became applicable. After plan 3 became effective, Employee made contributions under plan 3. Employee's last contributions were made in March 1996.

{3} In September 1995, Employee took sick leave. When Employee's sick leave was depleted in March 1996, Employee requested and was granted Family Medical Leave. Upon expiration of her Family Medical Leave in June 1996, Employee did not return to work. Employee applied for disability retirement, and in December 2002, was determined to be eligible for a duty-related retirement pension.

{4} A dispute arose between Employee and the PERB over the amount of her pension. Employee took the position that she was entitled to benefits calculated under plan 3. The PERB took the position that Employee's benefits were to be calculated under plan 2. Employee requested an administrative hearing. A hearing officer determined that Employee was entitled to benefits calculated under plan 2. The PERB adopted the hearing officer's decision.

{5} Employee appealed to the district court. The district court reversed the PERB's decision, ordering the PERB to calculate Employee's benefits under plan 3. The PERB appeals.

## DISCUSSION

{6} The PERA contains numerous coverage plans.[1] All plans share definitional and housekeeping provisions. *E.g.*, NMSA 1978, §§ 10–11–2(N) (2005) (defining membership); 10–11–8 (2004) (defining normal retirement);

---

1. We are advised by the PERB that the PERA contains twenty-nine plans.

10–11–10.1 (1993) (defining disability retirement). Each plan separately specifies (1) the date the plan becomes applicable, (2) the contribution rates for employees and employers for the particular plan, (3) the age and service credit requirements for normal retirement under the plan, and (4) the pension factor that is used to calculate the amount of the member's pension under the particular plan.

{7} Under coverage plan 2, the amount of a pension is calculated using a pension multiplier equal to two and one-half percent of the employee's final average salary. NMSA 1978, § 10–11–23 (1987). Under plan 3, the amount of a pension is calculated using a pension multiplier equal to three percent of the employee's final average salary. NMSA 1978, § 10–11–26.3 (1994). The amount of a pension calculated using the three percent multiplier of plan 3 will be 120 percent (six fifths) of a pension calculated using the two and one-half percent multiplier of plan 2.

{8} Plan 3 contains the following provision, which the PERB relied upon in denying Employee benefits calculated under plan 3:

> Notwithstanding the provisions of Section 3[NMSA 1978, § 10–11–26.2 (1994)] of this act, to qualify for payment under state general member coverage plan 3, a member *shall have one and one-half years of service credit earned under the general member coverage plan 3* subsequent to July 1, 1995.

NMSA 1978, § 10–11–26.7 (1994) (emphasis added). The PERB argues that Employee cannot "qualify for payment" under plan 3 because Employee did not earn one and one-half years of service credit under coverage plan 3 subsequent to July 1, 1995, as required by Section 10–11–26.7. Employee, who left her employment in June 1996, concedes that she earned less than one and one-half years service credit under plan 3.[2] As we explain below, the one and one-half years earned service credit requirement of Section 10–11–26.7 supplements the service credit requirements for *normal* retirement; retirees such as Employee, who have applied for early retirement due to a disability, are not subject to Section 10–11–26.7.

{9} Section 10–11–26.7 consists of an introductory phrase, "[n]otwithstanding the provisions of Section 3 [Section 10–11–26.2] of this act," and a principal clause beginning with "to qualify for payment." The underlying structure of Section 10–11–26.7 is a statement in the form "notwithstanding x, y," in which the outcome dictated by "y" qualifies the outcome that otherwise would obtain under "x." Section 10–11–26.2 is the "x" upon which the "y" of the main clause of Section 10–11–26.7 operates. We think that the natural manner of giving effect to a statement in the form of "notwithstanding x, y" is by limiting application of "y" to only those instances that otherwise would be governed by "x." Applied to Section 10–11–26.7, this means that only those members whose qualification for payment under plan 3 depends upon Section 10–11–26.2 in the first place are subject to Section 10–11–26.7's requirement of one and one-half years of service credit earned subsequent to July 1, 1995.

{10} Our analysis comports with the well-established rule of statutory construction requiring courts to give effect to all the language enacted by the Legislature. *See Vaughn v. State Taxation & Revenue Dep't,* 98 N.M. 362, 365–66, 648 P.2d 820, 823–24 (Ct.App.1982) (construing the Educational Retirement Act; observing "that the legislature is presumed to have used no surplus words, and that a statute must be construed so that no word and no part of the statute is rendered surplusage"), *superceded by statute as stated in Pierce v. State,* 121 N.M. 212, 226 n. 14, 910 P.2d 288, 302 n. 14 (1995). If we applied Section 10–11–26.7 to members whose qualification for retirement benefits was not dependent upon Section 10–11–26.2, we would be enforcing Section 10–11–26.7 as if it read:

> [T]o qualify for payment under state general member coverage plan 3, a member shall have one and one-half years of service credit earned under the general member coverage plan 3 subsequent to July 1, 1995.

Such a reading would require us to ignore the phrase "[n]otwithstanding the provisions

---

**2.** One and one-half years from July 1, 1995, elapsed at the end of December 1996.

/

of Section [10–11–26.2]" enacted by the Legislature and would violate the established rule of construction that requires us to give effect to all the language enacted by the Legislature. Unlike the PERB's proposed construction, our reading of Section 10–11–26.7 gives effect to the entire statute enacted by the Legislature.

{11} We next consider whether Employee's qualification for payment of a disability pension depended upon Section 10–11–26.2. Eligibility for *normal* retirement is governed by Subsection 10–11–8(A). Subsection 10–11–8(A)(4) incorporates by reference the age and service requirements of the applicable plan. A member cannot qualify for normal retirement under plan 3 without meeting the age and service requirements set out in Section 10–11–26.2. Employee applied for early retirement due to a disability, not for normal retirement. Eligibility for early retirement due to disability is governed by Section 10–11–10.1, not Subsection 10–11–8(A). Unlike Subsection 10–11–8(A), Section 10–11–10.1 does not incorporate the age and service requirements of the applicable plan in determining whether a member qualifies for a disability retirement pension. Subsection 10–11–10.1(A)(4). A member seeking to qualify for early retirement due to a duty-related disability is not subject to any minimum age or service requirements. Subsection 10–11–10.1(A)(4)(b). Section 10–11–26.2 plays no part in the determination of a member's qualification for early retirement due to a duty-related disability. Because Employee's qualification for early retirement due to a duty-related disability does not depend upon Section 10–11–26.2 in the first place, Section 10–11–26.7 has no effect on Employee's eligibility for retirement benefits.

{12} Our conclusion that the Legislature did not intend for Section 10–11–26.7 to apply to disability retirees is reinforced by considering the effect that the PERB's interpretation of Section 10–11–26.7 would have on members hired after July 1, 1995, who become disabled. Under the PERB's interpretation, no public employee qualifies for payment of benefits under plan 3 unless he or she has earned eighteen months of service credit subsequent to July 1, 1995. Thus, for example, under the PERB's interpretation, a public employee who was hired in 2005 and who made contributions under plan 3 throughout the entire period of his or her employment would not qualify for a disability pension under plan 3 if the employee had the misfortune to suffer a duty-related disability during the first one and one-half years of his employment because such an employee would not have "one and one-half years of service credit earned under the general member coverage plan 3 subsequent to July 1, 1995." Section 10–11–26.7. Applying the PERB's interpretation, the employee's benefits would be calculated under plan 2, even though plan 3 was applicable during the entire period of employment and even though the employee and employer had made contributions under plan 3. We do not believe that the Legislature intended such a result.

{13} As noted above, both plan 2 and plan 3 are applicable to Employee. Where two or more plans are applicable to a member, the PERA provides as follows:

The pension of a member who has three or more years of service credit under each of two or more coverage plans shall be determined in accordance with the coverage plan that produces the highest pension. The pension of a member who has service credit under two or more coverage plans but who has three or more years of service credit under only one of those coverage plans shall be determined in accordance with the coverage plan in which the member has three or more years of service credit. *If the service credit is acquired under two different coverage plans applied to the same affiliated public employer as a consequence of . . . a change in the law that results in the application of a coverage plan with a greater pension, the greater pension shall be paid a member retiring from the affiliated public employer under which the change in coverage plan took place regardless of the amount of service credit under the coverage plan producing the greater pension; provided the member has three or more years of continuous employment with that affiliated public employer immediately preceding or immediately preceding and immediately following the date the coverage plan changed.*

Section 10–11–8(F) (emphasis added). Plan 3 became applicable to Employee due to "a change in the law that results in the application of a coverage plan with a greater pension." *Id.* The record establishes that Employee had three or more years of continuous employment immediately preceding the date that plan 3 became applicable to Employee. Applying the italicized portion of Subsection 10–11–8(F), Employee is entitled to have her pension calculated under plan 3, which has the greater pension factor.

{14} The PERB argues that we must apply Section 10–11–26.7 to disability retirees in order to insure adequate funding of the enhanced benefits provided by plan 3. In making this argument, the PERB has not provided us with any information about the actual actuarial assumptions used in setting the contribution rates for plan 3 set out in NMSA 1978, §§ 10–11–26.5 and 10–11–26.6 (1994). The possibility that some percentage of members will retire due to a disability without having paid contributions commensurate with the benefits the member receives through a disability pension is an inherent risk in a pension scheme that includes both disability and retirement benefits. If, as we have held, the Legislature did not intend Section 10–11–26.7 to apply to disability retirees, then the Legislature presumably took into account the burden on plan funds due to disability retirements occurring during the one and one-half year period following July 1, 1995, when it fixed the contribution rates under plan 3.

{15} The order of the district court directing the PERB to calculate Employee's benefits using the three percent multiplier of plan 3 is affirmed.

{16} **IT IS SO ORDERED.**

JAMES J. WECHSLER, Judge (specially concurring).

JONATHAN B. SUTIN, Judge (specially concurring).

WECHSLER, Judge (specially concurring).

{17} I concur in the result of Judge Alarid's opinion, but I believe the governing statute is Section 10–11–10.1(N). That argument was presented to the district court and formed a part of that court's conclusions. It has also been fully briefed to this Court.

{18} Section 10–11–10.1(N) specifically addresses which plan should be used to calculate the pension of a disability retiree such as Employee:

> The amount of a disability retirement pension shall be calculated according to the provisions of the coverage plan applicable to the member at the time of application, except that the service credit requirement shall be waived and the actual amount of service credit shall be used instead. If the disability is the natural and proximate result of causes arising solely and exclusively out of and in the course of the member's performance of duty for an affiliated public employer, the amount of disability retirement pension shall be calculated according to the provisions of the coverage plan applicable to the member, imputing the amount of service credit necessary to meet the minimum service credit requirements for normal retirement.

The first clause of the first sentence applies to all disability retirees and requires that the pension use the "provisions of the coverage plan applicable to the member at the time of application." *Id.* The second clause does two things: first, it waives the amount of service credit required under Section 10–11–26.7, and second, it requires calculation using the actual amount of service credit earned. The second sentence modifies that last requirement for disability retirees such as Employee, who suffer a work-related disability, and requires calculation using imputed service credit. The plain language of the first sentence applies to all disability retirees, including Employee. *See Sims v. Sims,* 1996–NMSC–078, ¶ 17, 122 N.M. 618, 930 P.2d 153 ("The plain meaning rule of statutory construction states that '[w]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation.' ") (alteration in original) (citation omitted).

{19} The coverage plan applicable to Employee at the time of her application was plan

3. *See* § 10–11–26.1 ("State general member coverage plan 3 is applicable to state general members in the first full pay period after July 1, 1995 . . . ."). The argument that Employee did not earn sufficient service credit under Section 10–11–26.7 is irrelevant because the service credit requirement was waived by Section 10–11–10.1(N).

{20} The PERB argues that "[t]he service imputed under § 10–11–10.1(N) does not equate with 'earned' service credit as that term is used in § 10–11–26.7." It is true that Section 10–11–10.1(N) uses the phrase "service credit requirement" whereas Section 10–11–26.7 uses the phrase "service credit earned." However, the PERB does not point to an alternative meaning of "service credit requirement" in Section 10–11–10.1(N) other than that the "service credit requirement" is that required for normal retirement under Section 10–11–26.2. But the service credit required by Section 10–11–26.2 explicitly applies only to normal retirees and does not govern the plan under which an employee may retire. It therefore has no impact on the subject matter of Section 10–11–10.1(N). Section 10–11–10.1(B) is the provision that governs eligibility for disability retirement. Section 10–11–10.1(N) has no bearing on whether an employee is eligible; rather it addresses the plan that applies. It would be illogical for Subsection (N) to waive the service credit required under Section 10–11–26.2 when Section 10–11–26.2 does not address the plan that applies. We read statutes bearing on the same subject matter together. *See Pub. Serv. Co. of N.M. v. N.M. Pub. Util. Comm'n*, 1999–NMSC–040, ¶ 23, 128 N.M. 309, 992 P.2d 860 ("In ascertaining legislative intent, the provisions of a statute must be read together with other statutes in pari materia under the presumption that the legislature acted with full knowledge of relevant statutory and common law . . . . Thus, two statutes covering the same subject matter should be harmonized and construed together when possible, in a way that facilitates their operation and the achievement of their goals.") (emphasis omitted) (internal quotation marks and citations omitted).

{21} The PERB also argues that because Section 10–11–10.1(N) was enacted before plan 3 was created, Section 10–11–10.1(N) cannot be intended to affect any of the provisions of plan 3. But this Court does not assume that the legislature was unaware of the provisions of Section 10–11–10.1(N) at the time it enacted plan 3. *See Jicarilla Apache Nation v. Rodarte*, 2004–NMSC–035, ¶ 15, 136 N.M. 630, 103 P.3d 554 ("We presume that the Legislature acts with full knowledge of, and consistent with, existing legislation."). Rather, we impute to the legislature knowledge of the disability retirement provisions of PERA when it enacts new plans that will be governed by the disability retirement provisions. I also note that in 2003, the legislature enacted a new plan for municipal detention officers in which it required one and one-half years of service credit "[n]otwithstanding other provisions of the Public Employees Retirement Act." NMSA 1978, § 10–11–115.7 (2003). That phrase clearly evinces legislative intent that the one and one-half years of service credit not be waived by Section 10–11–10.1(N). Section 10–11–26.7, on the contrary, only requires service credit "[n]otwithstanding the provisions of Section 3." If the legislature had intended to require one and one-half years of service credit for disability retirees to retire under plan 3, I assume it would have used similar language to that in Section 10–11–115.7. *See, e.g., State v. Muniz*, 2003–NMSC–021, ¶ 11, 134 N.M. 152, 74 P.3d 86 ("Had the Legislature intended to limit the scope of Section 32A–2–20(F) to lesser-included offenses of first degree murder, it could have expressed that intent by using the phrase 'lesser-included offense.' "); *Hanson v. Turney*, 2004–NMCA–069, ¶ 12, 136 N.M. 1, 94 P.3d 1 ("It is thus clear that if the legislature intended to treat permit holders the same as owners of water rights, it knew how to draft a statute which would successfully do so.").

{22} I would therefore affirm the district court's decision based on Section 10–11–10.1(N).

SUTIN, Judge (specially concurring).

{23} I agree that we should affirm the district court, but I cannot agree to the

complicated analyses or the rationales by which Judge Alarid arrives at his result.

{24} We should read the plain language of the statute in a straightforward manner. The "notwithstanding" clause should be read to say that even if a person meets the age and service requirements of NMSA 1978, § 10–11–26.2 (1994) for normal retirement, the person cannot move into plan 3, but must stay with plan 2, if the person does not meet the limitation in NMSA 1978, § 10–11–26.7 (1994). At this point, the clarity of the statutes leaves a lot to be desired.

{25} Plan 3 benefits presumably are for both normal retirees and early disability retirees. Although it is by no means clear, it is certainly arguable that Section 10–11–26.7, which is a part of plan 3, essentially says that whoever wants the benefit of plan 3, including early disability retirees, must have met the eligibility requirement in that section. Otherwise, the person remains in plan 2.

{26} What is striking is the scenario in Judge Alarid's opinion of an employee hired in 2005. This shows a problem with PERB's position. Further, the statute is plainly un-

clear in regard to the intertwining of early disability retirement and normal retirement insofar as eligibility, age, and service requirements are concerned. As shown by Judge Alarid's discussions, it is not altogether clear whether the Legislature wanted early disability retirees to have to overcome age and service requirements in order to move into a plan for which they would otherwise be eligible were it not for the disability. Here, Plaintiff presumably would have been eligible for plan 3 had she not been disabled and had worked.

{27} I view this case as one created by a serious enough lack of legislative guidance and clarity to give the benefit of doubt to the retiree. I therefore agree to affirm the order of the district court.