865 P.2d 1218

**Julian Joseph BARELA,
Claimant–Appellee,**

v.

**ABF FREIGHT SYSTEM, Self-insured,
Respondent–Appellant.**

**No. 13873.**

Court of Appeals of New Mexico.

Nov. 2, 1993.

Julie W. Brown, Womack & Brown, Albuquerque, for claimant-appellee.

Robert Bruce Collins, Albuquerque, for respondent-appellant.

## OPINION

CHAVEZ, Judge.

ABF Freight System (ABF) appeals the order of the Workers' Compensation Judge (judge) awarding benefits for several periods of time for a hernia suffered by Worker, Julian Barela. First, the Parties were instructed to brief the issue of the finality of the compensation order and the timeliness of the notice of appeal in light of *Kelly Inn No. 102, Inc. v. Kapnison,* 113 N.M. 231, 824 P.2d 1033 (1992). In addition, the following issues are raised on appeal: (1) whether the judge's conclusions of law regarding the pre-existence of Barela's hernia are supported by the findings of fact; (2) whether the judge's award of temporary total disability benefits between February 19, 1991, and June 14, 1991, is supported by substantial evidence in the whole record; and (3) whether supplemental findings of fact were timely filed. We hold that ABF's notice of appeal was timely filed and that the judge's conclusions of law regarding the pre-existence of Barela's hernia were supported by its findings of fact. We also determine that the supplemental findings of fact were timely filed. Finally, we hold there is insufficient evidence on the whole record to support the judge's award of temporary total disability benefits between February 19, 1991, and June 14, 1991, and therefore we remand for deletion of that award from the compensation order.

FACTS

Barela was employed with ABF as a casual employee or temporary worker. At ABF, Barela was required to load boxes, unassisted, onto the trailer of a semi-truck. As a condition of his employment, he was examined by an ABF physician. On November 8, 1990, ABF's physician examined Barela and found no evidence of a hernia.

On November 21, 1990, Barela suffered an injury while working for ABF. The injury occurred while he was lifting 80–pound boxes off a fork lift and into a truck-trailer. Barela testified that he felt immediate pain in his groin area. The next day, he discovered a lump the size of the tip of his thumb in his groin area that was not present prior to the November 21, 1990 incident.

On November 30, 1990, Barela saw his family physician, Dr. Aragon, who examined Barela's lower abdomen and diagnosed a left

inguinal hernia and prescribed surgery. On the same day, Barela notified ABF of his injury, and was immediately referred to the Center for Occupational Medicine (COM). At the COM, Dr. Stearns examined Barela and diagnosed an incipient left inguinal hernia or a pulled muscle in the left lower abdomen. On December 4, 1990, Dr. Stearns re-examined Barela and released him back to work. At this time, Dr. Stearns cautioned him to use care in bending and lifting and to avoid lifting heavy objects. Dr. Stearns again examined Barela on December 19, 1990. Dr. Stearns still felt the lump in Barela's groin area but released him to work without restrictions.

Between December 20, 1990, and February 18, 1991, Barela worked as an assistant wrestling coach for Los Lunas High School. As an assistant wrestling coach, his duties and responsibilities included: driving a bus, issuing uniforms, timing matches, videotaping meets, and demonstrating correct moves for the wrestlers if they were making mistakes. However, his employment did not involve physical contact with the students or wrestling itself.

Barela was unemployed from February 19, 1991, to June 14, 1991; however, later Barela was subsequently employed by Volt Temporary Services (Volt) from June 15, 1991, to August 5, 1991. Volt assigned him temporarily to the maintenance department of the Public Service Company of New Mexico (PNM). At PNM, he was required to drive a truck, pick up tools for other maintenance workers, and assist in taking down and putting up office panels. The office panels weighed approximately 40 pounds.

In June 1991, Barela became concerned because the lump in his left abdomen as well as pain persisted. Thereafter, he notified ABF that the lump had not receded. ABF directed him to return to the COM. At the COM, Dr. Toner then examined and diagnosed a palpable left-sided hernia. Dr. Toner referred Barela to Dr. Castillo. After examining Barela, Dr. Castillo diagnosed a left inguinal hernia and scheduled surgery.

On August 5, 1991, Barela underwent surgery, at which time, Dr. Castillo found and removed a long, indirect inguinal hernia with a hydrocele attached to its base. Dr. Castillo then testified that to a reasonable medical probability, the November 21, 1990 lifting incident aggravated the hernia, which prompted the need for surgery.

Barela filed a claim for workers' compensation benefits against ABF claiming disability and medical benefits arising out of a work-related inguinal hernia suffered November 21, 1990. The formal hearing was held January 29, 1992. He was awarded certain temporary total disability benefits and payment of all medicals relating to the injury. Attorney fees and costs were determined by a separate hearing.

## DISCUSSION

### I.  *UNTIMELY NOTICE OF APPEAL*

Barela contends that this appeal should be dismissed because ABF's notice of appeal was untimely. He argues that ABF was required to file its appeal within thirty days from the original compensation order. *See* SCRA 1986, 12–201(A) (Repl.1992) (mandating notice of appeal within thirty days of the filing of final order). ABF takes the position that it had thirty days from the date of the order awarding attorney fees to file its notice of appeal.

In support of his argument, Barela refers to the February 24, 1992 hearing for attorney fees. At that hearing, the Parties discussed an error in the judge's findings of fact and conclusions of law regarding the maximum amount of weekly compensation benefits allowed at the time of Barela's injury. As a result of this error, the judge issued a second compensation order, correcting its findings and additionally awarding attorney fees. However, the order also stated that, "[t]his Order is entered nunc pro tunc and shall relate back to the compensation order entered in this matter on January 31, 1992." Barela thus argues that because the second compensation order was entered nunc pro tunc to January 31, 1992, ABF had thirty days from that date to file its notice of appeal.

In order to answer Barela's challenge, we must first determine whether the attorney fee award in the second compensation order, entered nunc pro tunc on February 24, 1992, related back to the first compensation order entered January 31, 1992. We hold it did not. "A nunc pro tunc order has reference to the making of an entry now, of something which was actually previously done, so as to have it effective as of the earlier date." *Gonzales v. City of Albuquerque*, 90 N.M. 785, 786, 568 P.2d 621, 622 (Ct.App.1977). Similarly, " '[i]t is not to be used to supply some omitted action of the court or counsel, but may be utilized to supply an omission in the record of something really done but omitted through mistake or inadvertence.' " *Id.* at 786, 568 P.2d at 622 (quoting *Mora v. Martinez*, 80 N.M. 88, 89, 451 P.2d 992, 993 (1969)); *see also Maloof v. San Juan County Valuation Protests Bd.*, 114 N.M. 755, 758, 845 P.2d 849, 852 (Ct.App. 1992). Thus, because the judge could not relate back his determination of attorney fees, was the appeal taken within thirty days of the second compensation order timely? We hold it was.

Putting together the two recent Supreme Court cases of *Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 824 P.2d 1033 (1992), and *Trujillo v. Hilton of Santa Fe*, 115 N.M. 397, 851 P.2d 1064 (1993), we conclude that ABF could have appealed from either compensation order. *Trujillo* makes clear that a timely appeal from the second order awarding attorney fees, although more than thirty days from the first compensation order, was timely. This court therefore has jurisdiction to consider ABF's appeal.

## II. *PRE–EXISTING HERNIA*

ABF asserts that the judge's conclusions of law Nos. 8–11 are not supported by its findings of fact. At the hearing, Barela had the burden of proving the following: (1) that his hernia was of recent origin; (2) that its appearance was accompanied by pain; (3) that it was immediately preceded by some accidental strain suffered in the course of his employment; and (4) that the hernia did not

exist prior to the date of the alleged injury. NMSA 1978, Section 52–1–45 (Repl. Pamp.1987). The judge's conclusions of law Nos. 8–11 state that Barela clearly proved these elements. ABF specifically challenges the judge's conclusion that Barela's hernia did not exist prior to the date of the alleged injury.

ABF asserts that the judge accepted in its findings of fact that Dr. Castillo concluded and rendered the opinion that the November 21, 1990 lifting incident *aggravated* the hernia, thus necessitating surgery. Finding the hernia was aggravated implies that it pre-existed the November 21, 1990 lifting incident. Thus, ABF contends that the judge's conclusions of law Nos. 8–11, which state that Barela met the elements required by Section 52–1–45, are unsupported by its findings.

We hold that the judge's findings of fact support the conclusion of law that Barela's hernia did not exist prior to the date of the alleged injury. The Parties have not cited any cases which define "hernia." However, *Flournoy v. E.P. Campbell Drilling Co.*, 74 N.M. 336, 338, 393 P.2d 449, 450 (1964), stated that, "[t]o be a compensable hernia there must be a protrusion." Protrude is defined as "to thrust forward; to cause to project or stick out; to jut out from the surrounding surface or context." Webster's New Collegiate Dictionary 927–28 (1st ed. 1977). Thus, a compensable hernia is one which juts out from the surrounding skin.

After reviewing the record, it is clear that the hernial protrusion that finally led Barela to surgery did not exist prior to the on-the-job injury. Dr. Castillo testified that,

> As the human body is being developed in the uterus, the testicles lay [sic] in the abdomen, and they drop down into the scrotal sac, and as they are doing this, they pull the lining of the abdominal wall with them, and that closes most of the time, but sometimes that lining stays open, or it can close over partially.
>
> When it stays open, you have the possibility of developing a hernia at a later date,

and if part of it closes, not all of it, then you end up with just a little sac of water along this tract, and that's exactly what [Worker] had. (Castillo Deposition at 6–7).

Later, Dr. Castillo noted, "[i]t's my feeling that this hernia was there—he's had the potential to have a hernia since the day he was born[,]" and "[i]t might have never bothered him the rest of his life.... [I]t's just the potential for them is there." Dr. Castillo further characterized the "potential" hernia as a defect Barela was born with that may have remained quiescent throughout his life. He concluded that the "defect," however, became symptomatic, meaning that the lump in Barela's groin appeared, as a result of the straining injury.

In sum, Barela's hernia did not exist until it protruded as a lump in his groin. The protrusion occurred immediately after the accidental strain which occurred on November 21, 1990, in the course and scope of Barela's employment with ABF. The judge found that the ABF doctor found no evidence of a hernia on November 8, 1990, and that no lump was present before the November 21, 1990 incident. Thus properly interpreting the finding related to Dr. Castillo's conclusion, there is no contradiction in the judge's findings and they support his conclusion that there was no pre-existing hernia within the meaning of the Workers' Compensation Act.

## III. *UNTIMELY FILING OF SUPPLE-MENTAL FINDINGS OF FACT*

Barela contends that ABF cannot rely on its supplemental proposed findings of fact because they were not timely filed. He argues that *Wagner Land & Inv. Co. v. Halderman*, 83 N.M. 628, 495 P.2d 1075 (1972), should control in this situation. *Halderman* addressed the issue of whether the trial court had authority to permit the filing of requested findings and to rule upon them after the notice of appeal had been filed. *Id.* In *Halderman* the trial court based its decision upon the pleadings, affidavits, and depositions on file. *Id.* The parties were given

approximately one month's notice of when the trial court would settle requested findings of fact and conclusions of law. *Id.* The plaintiffs did not request permission from the trial court to file initial findings until twenty-nine days after the entry of judgment. *Id.* On the same day, the plaintiffs filed their notice of appeal. *Id.* Our Supreme Court stated, "[T]he trial court loses jurisdiction of the case upon the filing of the notice of appeal, except for the purposes of perfecting such appeal, or of passing upon a motion directed to the judgment pending at the time." *Id.* at 630, 495 P.2d at 1077. *See Martinez v. Martinez*, 101 N.M. 493, 496, 684 P.2d 1158, 1161 (Ct.App.1984) ("When a party waits to request findings of fact and conclusions of law until after the court files judgment and he himself files his notice of appeal, the lack of any findings in the record precludes review of the evidence in this Court.").

In this case the Parties were required to submit their proposed findings of fact and conclusions of law before trial. ABF submitted its proposed findings and conclusions on January 21, 1992, three days before the scheduled date for hearing. However, as counsel for ABF pointed out, it did not submit proposed findings with respect to the award of temporary total disability benefits during the questioned time period, because it did not anticipate the analysis adopted by the judge. As a result, ABF sought to preserve this issue by submitting supplemental proposed findings directly to the judge on February 27, 1992, three days after the filing of the compensation order. *See* SCRA 1986, 1-052(B)(2) (party has ten days after entry of judgment within which to move for additional findings or amendment of findings). The judge refused to accept the supplemental proposed findings. On March 19, 1992, ABF filed a motion to reconsider which questioned the judge's award of temporary total disability benefits during the time in question. Five days later, ABF filed its notice of appeal. On April 6, 1992, the judge held a hearing concerning ABF's motion to reconsider and found that he did not have jurisdiction to

hear the motion because the notice of appeal had been filed. At this same hearing, ABF again requested that the judge allow it to file its supplemental proposed findings. On April 8, 1992, the judge filed his order concerning ABF's motion to reconsider. The order stated that the judge did not have jurisdiction to consider ABF's motion to reconsider, denied ABF's supplemental proposed findings, but allowed ABF to file its supplemental proposed findings with the Workers' Compensation Administration and allowed them to be deemed filed as of February 27, 1992.

█ Although some language in *Halderman* might suggest otherwise, we believe that the judge had jurisdiction to accept the supplemental proposed findings for filing after ABF filed its notice of appeal. Our conclusion is based on the recent Supreme Court decision in *Kelly Inn.* In that opinion the Supreme Court acknowledged that the general rule restricting the jurisdiction of the trial court after filing of a notice of appeal had "taken on the character of an inflexible law of nature rather than a pragmatic guideline enabling trial courts to determine when to proceed further with some part of a case and when to refrain because issues already resolved are under consideration by an appellate court." *Kelly Inn,* 113 N.M. at 241, 824 P.2d at 1043. As a consequence, *Kelly Inn* held that the trial court retained jurisdiction to set the amount of attorney's fees when more than thirty days had passed from the judgment and a party had appealed from that judgment. *Id.* In its decision the *Kelly Inn* Court focused on the effect that the subsequent trial court action would have on the judgment on appeal. *Id.* The Court stated, "It is clear, though, that a pending appeal does *not* divest the trial court of jurisdiction to take further action when the action *will not affect the judgment on appeal* and when, instead, the further action enables the trial court to carry out or enforce the judgment." *Kelly Inn,* 113 N.M. at 241, 824 P.2d at 1043. We conclude that the notice of appeal in this case did not deprive the judge of jurisdiction to permit ABF to file its sup-

plemental proposed findings, which had been submitted to the judge well before filing of the notice.

## IV. REASONABLENESS OF JUDGE'S AWARD OF TEMPORARY TOTAL DISABILITY BENEFITS FROM FEBRUARY 19, 1991, TO JUNE 14, 1991.

█ ABF asserts that the judge's award of temporary total disability benefits from February 19, 1991, to June 14, 1991, was not supported by the evidence. ABF's appeal of this issue is governed by the whole record standard of review. *Tallman v. ABF (Arkansas Best Freight),* 108 N.M. 124, 128, 767 P.2d 363, 367 (Ct.App.), *cert. denied,* 109 N.M. 33, 781 P.2d 305 (1988). When reviewing for sufficiency of the evidence from a workers' compensation order, the court reviews the record as a whole in order to be satisfied that the evidence demonstrates the decision is reasonable. *Id.* We view "'the evidence in the light most favorable to the agency decision, but may not view favorable evidence with total disregard to contravening evidence.'" *National Council on Compensation Ins. v. New Mexico State Corp. Comm'n,* 107 N.M. 278, 282, 756 P.2d 558, 562 (1988) (citations omitted). The whole record fails to support the finding of the judge as to this issue.

To justify an award for total disability benefits under the Workers Compensation Act there must be an "impairment to a worker resulting by reason of an accidental injury arising out of and in the course of employment which prevents the worker from engaging, for remuneration or profit, in any occupation for which he is or becomes fitted by age, training or experience." NMSA 1978, § 52-1-25 (Repl.Pamp.1987). ABF argues that the judge had no basis for awarding temporary total disability benefits during the period from February 19, 1991, to June 14, 1991, which we shall call the disputed period. ABF points out that the judge found that Barela "was not suffering from any impairment which would prevent him from engaging for remuneration or profit in any occupa-

tion for which he was fitted by age, training, or experience" during the two month period immediately preceding the disputed period and during the period of almost two months immediately after the disputed period. Prior to the disputed period Barela was employed at Los Lunas for approximately two months; after the disputed period Barela was employed by Volt for almost two months. ABF points out that the day before Barela began working as wrestling coach Dr. Stearns examined Barela and released him to work without restrictions.

 ABF properly contends that Barela's unemployment in itself does not trigger his entitlement to disability benefits. *See Schober v. Mountain Bell Tel.,* 96 N.M. 376, 381, 630 P.2d 1231, 1236 (Ct.App.1980) ("[C]ompensation for disability depends on the inability to perform some of the work for which the workman is fitted[,] not on whether or not the workman is employed.") (citation omitted); *cf. Barnett & Casbarian, Inc., v. Ortiz,* 114 N.M. 322, 326, 838 P.2d 476, 480 (Ct.App.), *cert. quashed* (Aug. 20, 1992) (disability is measured by capacity to perform work, which is independent of a fluctuation in job openings). Nothing in the judge's findings explains why Barela was disabled during the disputed period but not prior to or after that period. Nor does Barela's answer brief indicate the existence of any evidence to support a finding of disability during the disputed period.

Consequently, we must reverse the award of temporary total disability benefits during the disputed period and remand for entry of an amended compensation order deleting that award.

CONCLUSION

ABF timely filed its notice of appeal and the judge had jurisdiction to accept for filing ABF's proposed supplemental findings. The judge's findings support his conclusion that Barela's hernia did not exist prior to the November 21, 1990 incident and that Barela fulfilled the requirements of Section 52–1–45. There was, however, insufficient evidence on the whole record to support the judge's

award of temporary total disability benefits between February 19, 1991, and June 14, 1991. As a result, we reverse and remand for entry of an amended compensation order deleting the award of those benefits. Each party shall bear the cost of its attorney fees.

IT IS SO ORDERED.

BIVINS and HARTZ, JJ., concur.