IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMCA-125

Filing Date: September 8, 2009

Docket No. 27,543

DALE NELSON,

       Worker-Appellee/Cross-Appellant,

v.

HOMIER DISTRIBUTING CO., INC.,

       Employer,

and

CENTURY SURETY COMPANY,

       Insurer-Appellant/Cross-Appellee.

APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Ned S. Fuller and Helen L. Stirling, Workers' Compensation Judges

Chris Lucero, Jr.
Albuquerque, NM

for Worker-Appellee/Cross-Appellant

Madison, Harbour & Mroz, P.A.
Gregory D. Steinman
Albuquerque, NM

for Insurer/Appellant/Cross-Appellee

Paul L. Civerolo, L.L.P.
Paul L. Civerolo
Albuquerque, NM

for Employer/Cross-Appellee

1

**KENNEDY, Judge.**

**{1}** Century Surety Co. (Insurer) appeals and Dale Nelson (Worker) cross-appeals the Workers' Compensation Administration's (WCA) decision awarding benefits to Worker. We affirm the WCA's decision and remand for further proceedings regarding Worker's motions for attorney fees and interest.

**{2}** Homier Distributing Co., Inc. (Employer) is a company that travels to various locations to put on shows selling tools and other items. On June 18, 2000, Employer was closing a show in Farmington in preparation for an upcoming show in Santa Fe. Worker alleges that on that date he was hired by Employer to drive a truck from Farmington to Santa Fe and back. Employer denies that it hired Worker or instructed him to drive the truck. Worker asserts that he was told to drive the truck to a gas station, fill it with fuel, and return to Employer's temporary location at a Farmington mall. Worker asserts that he did as instructed and that upon returning to the mall, he noticed a problem with the truck's lights and decided to ask a forklift driver what to do about fixing them. Worker stepped onto the forklift, but the driver apparently did not notice he was there and began driving off. Worker fell and was dragged some distance across the parking lot, suffering serious injuries. Subsequent tests indicated that Worker had alcohol and cocaine in his system at the time of the accident. Employer denied workers' compensation benefits to Worker. Worker filed a claim with the WCA about twenty months after the accident.

**{3}** The issues were bifurcated for trial. The first trial, held on November 10, 2003, before Judge Ned Fuller, was limited to the issues of who, if anyone, was Worker's employer, and whether Employer's defenses of notice, statute of limitations, and intoxication were applicable. Judge Fuller ruled that Worker was an employee of Employer and that Worker's claim was not barred by the statute of limitations because the statute was tolled when Employer failed to file a report of the accident in New Mexico. Judge Fuller also found that "Worker's judgment and physical reaction [time] were impaired by alcohol and cocaine," but concluded that the effect of this impairment on Worker's entitlement to benefits was reserved for the second part of the bifurcated proceedings.

**{4}** Judge Helen Stirling presided over the second portion of the bifurcated trial on May 5, 2006. Among her findings of fact were that "alcohol and cocaine [we]re contributing causes of Worker's accident and resulting injuries." She declined to reduce Worker's benefits by ten percent pursuant to NMSA 1978, Section 52-1-12.1 (2001), because there was no indication in the evidence "that the test and testing procedures conform[ed] to the federal department of transportation 'procedures for transportation workplace drug and alcohol testing programs' and the test [was] performed by a laboratory certified to do the testing by the federal department of transportation," as required by that statute.

**{5}** Insurer raises five issues: (1) the statute of limitations barred Worker's claim for

2

indemnity benefits; (2) Worker's intoxication and drug consumption barred his claims; (3) Judge Stirling, the second workers' compensation judge (WCJ), erred in reconsidering the findings and conclusions of Judge Fuller, the first WCJ; (4) Judge Fuller erred in admitting a gas station receipt without authentication or foundation; and (5) Judge Fuller erred in denying Employer's motion for directed verdict.

**{6}** Worker cross-appeals, raising two issues: (1) whether Judge Stirling incorrectly calculated Worker's average weekly wage and weekly compensation rate; and (2) whether Judge Stirling erred in denying Worker's motion that his medical bills are required to be paid by Employer or Insurer, whether or not Worker is entitled to compensation, and whether Judge Stirling improperly refused to award pre- and post-judgment interest and attorney fees.

## STATUTE OF LIMITATIONS

**{7}** Whether an action is barred by the applicable statute of limitations is a question of law that we review de novo. *See, e.g.*, *McNeill v. Rice Eng'g & Operating, Inc.*, 2006-NMCA-015, ¶ 26, 139 N.M. 48, 128 P.3d 476 (filed 2005).

**{8}** Employer is headquartered in Indiana and does not maintain an office in New Mexico. Employer filed a first report of injury with the Indiana WCA on June 20, 2000, two days after the date of Worker's injury, but did not file one in New Mexico. Worker did not file his claim for workers' compensation until February 22, 2002, about nineteen months after Employer denied his claim for benefits on July 17, 2000.

**{9}** New Mexico's Workers' Compensation Act (Act) requires employers to report accidents to the director of the WCA:

> It is the duty of every employer of labor in this state subject to the provisions of the [Act] or the employer's workers' compensation insurance carrier to make a written report to the director of all accidental injuries or occupational diseases that occur to any of his employees during the course of their employment and that result in lost time of an employee of more than seven days. . . . Such reports shall be made within ten days after such accidental injury[.]

NMSA 1978, § 52-1-58(A) (1990). The Act further provides, in reference to the required accident report:

> No claim for compensation under the [Act], as it now provides or as it may hereafter be amended, shall be barred prior to the filing of such report or within thirty days thereafter, but this section does not shorten the time now provided for filing claims with the director.

NMSA 1978, § 52-1-59 (1989). The Act specifies that when an employer or insurer does

3

not pay compensation to which a worker is entitled, "it is the duty of the worker insisting on the payment of compensation to file a claim therefor as provided in the [Act] not later than one year after the failure or refusal of the employer or insurer to pay compensation." NMSA 1978, § 52-1-31(A) (1987).

**{10}** Insurer's statute of limitations argument is based on Worker's failure to file his claim within one year after Employer denied compensation. Worker argues that the limitations period was tolled under Section 52-1-58 by Employer's failure to file a report of the accident with the WCA. Insurer responds that Employer was not required to file a report because the accident did not "result in lost time of an employee of more than seven days." Section 52-1-58(A). Insurer also argues that the report filed in Indiana substantially complied with Section 52-1-58(A).

**{11}** Although Judge Fuller's findings of fact include the fact that "Worker did not expect any work with [Employer] to last more than one day," there appears to be no dispute that Worker's injuries were severe enough that, if employment had lasted longer, he would have lost more than seven days work. The question of whether Section 52-1-58(A) requires that an accident report be filed in these circumstances appears to be one of first impression and requires that we interpret Section 52-1-58(A).

> Statutory interpretation is a question of law, which we review de novo. The guiding principle of statutory construction is that a statute should be interpreted in a manner consistent with legislative intent. To determine legislative intent, we look not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied.

*Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69 (citations omitted). "We will not depart from the plain meaning of a statute, unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the legislature could not have intended, or deal with an irreconcilable conflict among statutory provisions." *City of Rio Rancho v. Logan*, 2008-NMCA-011, ¶ 7, 143 N.M. 281, 175 P.3d 949 (filed 2007). "If, however, the language of the statute is ambiguous, we must interpret the statute, and determine legislative intent." *Hanson v. Turney*, 2004-NMCA-069, ¶ 7, 136 N.M. 1, 94 P.3d 1.

**{12}** Section 52-1-58(A) is ambiguous in that it is not clear from the language which of three possible meanings is intended by the phrase "result in lost time of an employee of more than seven days." The phrase could mean: (1) the employee was unable to work anywhere for more than seven days; (2) the employee was unable to work for his or her present employer for more than seven days; or (3) the employee had worked for that employer for more than seven days.

**{13}** While the Act provides no clear expression of the Legislature's intent in using this language, it appears to us that the statute's specification of the seven-day time frame is most

4

likely related to establishing a threshold for the severity of injuries requiring reporting, and is best understood as referring to the first option specified above: seven days in which the employee is unable to work, regardless of whether he or she actually still works for the employer. This conclusion comports with the WCA's function of monitoring and promoting workplace safety. *See, e.g.*, NMSA 1978, § 52-1-2 (2003) (subjecting employers to liability under the Act); NMSA 1978, § 52-5-1 (1990) (discussing the goal of "quick and efficient delivery of indemnity" to injured workers); NMSA 1978, § 52-1-6.2 (1990) (providing for safety investigations); *see also Morales v. Reynolds*, 2004-NMCA-098, ¶ 6, 136 N.M. 280, 97 P.3d 612. A conclusion that the seven-day time frame applies either to the length of time an employee has already worked for an employer or to the time the employee would continue working for an employer would serve no clear function, and could lead to incongruous results where serious accidents during a worker's first seven days or most particularly in this case, a worker's last seven days of work would not need to be reported. We therefore hold that where an employee's injury would prevent his or her working for more than seven days following the injury, an employer must file a report. Accordingly, there being no dispute in this case that Worker could not work for more than seven days after his injury, Employer or Insurer was required to file a report pursuant to Section 52-1-58(A).

**{14}** We are not persuaded by Insurer's argument that the report filed in Indiana substantially complied with Section 52-1-58(A). The language of the section plainly requires filing with "the director," defined as the director of the WCA. *See* NMSA 1978, § 52-1-1.1(B) (2003). Further, nothing in the record indicates that the New Mexico WCA learned of Worker's injury as a result of the Indiana filing.

**{15}** Solely because neither Employer nor Insurer timely filed the report required by Section 52-1-58(A), Worker's claim was not barred by the statute of limitations. *See* § 52-1-59.

**EFFECT OF ALCOHOL AND DRUGS**

**{16}** Insurer's contention that Worker's alleged intoxication barred his claim requires us to review the evidence upon which Judge Stirling relied. "When reviewing for sufficiency of the evidence from a workers' compensation order, the court reviews the record as a whole in order to be satisfied that the evidence demonstrates the decision is reasonable." *Barela v. ABF Freight Sys.*, 116 N.M. 574, 579, 865 P.2d 1218, 1223 (Ct. App. 1993). "Under whole record review, the court views the evidence in the light most favorable to the agency decision, but may not view favorable evidence with total disregard to contravening evidence. *Nat'l Council on Comp. Ins. v. N.M. State Corp. Comm'n*, 107 N.M. 278, 282, 756 P.2d 558, 562 (1988) (citations omitted).

**{17}** The Act provides that "[n]o compensation shall become due or payable from any employer under the terms of the [Act] in event such injury was occasioned by the intoxication of such worker." NMSA 1978, § 52-1-11 (1989). The Act also provides:

5

No compensation is payable from any employer under the provisions of the [Act] if the injury to the person claiming compensation was occasioned solely by the person being under the influence of a depressant, stimulant or hallucinogenic drug as defined in the New Mexico Drug, Device and Cosmetic Act . . . or under the influence of a narcotic drug as defined in the Controlled Substances Act[.]

NMSA 1978, § 52-1-12 (1989).

{18}    Judge Fuller's findings of fact indicated, "[t]ests revealed that some time after the accident Worker had a blood alcohol content level of .079 and had a high amount of cocaine in his system," and "Worker's judgment and physical reaction were impaired by . . . cocaine." Judge Fuller specifically reserved the question of "whether Worker's injury was occasioned by his intoxication or whether the intoxication was simply a contributing factor" for the second part of the proceedings, apparently due to incomplete discovery.

{19}    In the second part of the proceedings, Judge Stirling found that "Worker's accident was not occasioned by alcohol" and that "Worker's accident was not occasioned solely by drug influence." Judge Stirling made detailed findings regarding Worker's consumption of alcohol and cocaine and the effects thereof. There was evidence that Worker's blood alcohol content forty minutes after the accident was .079, and expert testimony extrapolating from this that it was .092 at the time of the accident. This suggested that Worker had consumed more than the two beers he acknowledged having at lunch before the accident. Judge Stirling explained her conclusion that the accident was nonetheless not occasioned by alcohol, noting that Worker was not driving the forklift and thus there was no clear nexus between his impairment and the injury. Also, whatever impairment existed had not been sufficient to prevent Worker from accomplishing other tasks before the accident, including driving the truck to the gas station and back, completing paperwork, inspecting the truck, and discovering the defective lights. Regarding the cocaine, Judge Stirling noted that although Worker acknowledged ingesting three lines of cocaine sixty-six hours before the accident, there was no evidence as to the amount in his system at the time of the accident. We conclude that substantial evidence supported the findings that Worker's injury was not occasioned by intoxication or occasioned solely by his being under the influence of drugs.

{20}    Judge Stirling concluded that although Worker's injuries were not occasioned by either alcohol or cocaine, both were contributing causes. The Act provides for a ten percent reduction in compensatory benefits where alcohol or drugs are contributing causes of an injury:

The compensation otherwise payable [to] a worker pursuant to [the Act] shall be reduced ten percent in cases in which the injury to or death of a worker is not occasioned by the intoxication of the worker as stated in Section 52-1-11 . . . or occasioned solely by drug influence as described in Section 52-1-12 . . . , but voluntary intoxication or being under the influence

6

of a depressant, stimulant or hallucinogenic drug . . . is a contributing cause to the injury or death.

Section 52-1-12.1. However, this section limits the evidence that may be considered in evaluating drugs or alcohol as a contributing cause:

> Test results used as evidence of intoxication or drug influence shall not be considered in making a determination of intoxication or drug influence unless the test and testing procedures conform to the federal department of transportation "procedures for transportation workplace drug and alcohol testing programs" and the test is performed by a laboratory certified to do the testing by the federal department of transportation.

*Id.*

**{21}**    Judge Stirling found that although she had no doubt that the alcohol and cocaine were contributing causes of the accident, there was no evidence that the tests used as evidence met the standards set forth in the last sentence of Section 52-1-12.1. Accordingly, Worker was granted full benefits.

**{22}**    We observe that Worker was tested for alcohol and drugs shortly after the accident on June 18, 2000, but Section 52-1-12.1 did not become effective until July 1, 2001. Thus, at the time the tests were given, there was no statutory requirement that they meet any particular standard. A question thus arises as to whether Section 52-1-12.1 operates retroactively. "New Mexico law presumes that statutes and rules apply prospectively absent a clear intention to the contrary." *Howell v. Heim*, 118 N.M. 500, 506, 882 P.2d 541, 547 (1994). "Although the presumption of prospectivity appears straightforward, confusion often arises as to what retroactivity means in particular contexts." *Gadsden Fed'n of Teachers v. Bd. of Educ.*, 1996-NMCA-069, ¶ 14, 122 N.M. 98, 920 P.2d 1052. The general rule is that "[a] statute . . . is considered retroactive if it impairs vested rights acquired under prior law or requires new obligations, imposes new duties, or affixes new disabilities to past transactions." *Id*. (internal quotation marks and citation omitted).

**{23}**    The present circumstances give rise to two possibilities, both of which lead to an outcome consistent with Judge Stirling's decision not to reduce Worker's benefits. If Section 52-1-12.1 is given no retroactive effect at all, and the applicable law is that which was in effect on the date of the accident, then the only issue is whether benefits are barred in their entirety by Sections 52-1-11 and 52-1-12. Judge Stirling ruled that benefits were not barred under those two sections, as discussed above. If Section 52-1-12.1 is given retroactive effect—such that someone injured before its effective date but whose claim is filed with the WCA after its effective date is subject to its provisions—then the drug and alcohol tests must meet the standards specified in Section 52-1-12.1. Judge Stirling ruled that no evidence showed the tests met the standards. Thus, regardless of whether or how retroactivity is applied, Worker's benefits would not be reduced by ten percent.

7

**{24}** We are not persuaded by Insurer's argument that because Worker did not object to the tests at trial, Judge Stirling erred in disregarding them. The language of Section 52-1-12.1 is mandatory: tests "shall not be considered" unless they conform to the specified standards. *See* NMSA 1978, § 12-2A-4 (1997); *see also Montano v. Los Alamos County*, 1996-NMCA-108, ¶ 5, 122 N.M. 454, 926 P.2d 307 (stating that "the words 'shall' and 'will' are mandatory and 'may' is permissive or directory") (citation omitted). For these reasons, we conclude that Judge Stirling did not err in ruling that Worker was entitled to full benefits.

## CONSISTENCY OF RULINGS OF FIRST AND SECOND JUDGES

**{25}** Insurer argues that in the second part of the proceedings Judge Stirling improperly reconsidered and reversed certain findings of Judge Fuller from the first part of the proceedings. Judge Fuller included the following conclusion of law in his compensation order filed on December 5, 2003: "All remaining issues including whether Worker's injury was occasioned by his intoxication or whether the intoxication was simply a contributing factor are bifurcated and will be resolved at a future hearing." The pretrial order for the second part of the proceedings listed among the contested issues "[w]hether all [W]orker's workers' compensation benefits and medical will be barred altogether because of his intoxication and/or drug use, or whether any workers' compensation benefits are reduced by [ten percent]." Insurer argues that Judge Fuller's conclusion of law and pretrial order limited Judge Stirling to a choice between denying benefits altogether or reducing benefits by ten percent. As discussed above, Judge Stirling granted Worker benefits without reduction.

**{26}** We agree that Judge Fuller's conclusion of law and pretrial order establish that some degree of impairment existed, given the blood tests at the hospital and Worker's admissions of drinking alcohol and using cocaine. The only remaining issue was therefore the effect of this fact on Worker's benefits. We disagree that Judge Stirling was limited to the options of denying benefits altogether or reducing benefits by ten percent. With regard to the portion of the pretrial order quoted above, for example, Judge Stirling had the option of answering "no" to both the question of whether benefits should be denied and the question of whether benefits should be reduced by ten percent.

**{27}** We also disagree with Insurer's basic proposition that Judge Fuller's conclusions and the pretrial order precluded Judge Stirling from ruling as she did. A court "has the inherent authority to reconsider its interlocutory orders, and it is not the duty of the [court] to perpetuate error when it realizes it has mistakenly ruled." *Tabet Lumber Co. v. Romero*, 117 N.M. 429, 431, 872 P.2d 847, 849 (1994) (internal quotation marks and citation omitted). In the case cited by Insurer, *Gregson v. Gregson*, 739 So. 2d 1266, 1267 (Fla. Dist. Ct. App. 1999), the court stated, "The general rule is that a successor judge cannot review, modify, or reverse on the merits and on the same facts the final orders of a predecessor, unless there exists some special circumstances such as mistake or fraud upon the court." (Internal quotation marks and citation omitted.) In the present case, Judge Fuller's conclusion was not a final order, as further proceedings were required to dispose of the case. Judge Stirling, who took further evidence regarding Worker's alleged intoxication and determined that there

was no evidence that the tests relied upon met the standards set forth in Section 52-1-12.1, would have perpetuated error had she limited herself to the two options that Insurer claims were the only ones available.

**{28}** For these reasons, we conclude that Judge Stirling's grant of full benefits to Worker was not precluded by Judge Fuller's earlier rulings.

**ADMISSION OF GAS RECEIPT**

**{29}** Insurer argues that Judge Fuller improperly admitted a copy of a gas station receipt into evidence. We review for abuse of discretion:

> Admission or exclusion of evidence is a matter within the discretion of the [district] court and the court's determination will not be disturbed on appeal in the absence of a clear abuse of that discretion. An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. A [district] court abuses its discretion by its ruling only if we can characterize it as clearly untenable or not justified by reason.

*Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 36, 127 N.M. 47, 976 P.2d 999 (internal quotation marks and citations omitted).

**{30}** Worker testified that after he got out of the hospital he returned to the gas station where he had fueled the truck just before the accident and obtained a photocopy of the receipt he had signed. The receipt presumably was admitted to support Worker's contention that Employer had in fact hired him and directed him to perform the task of fueling the truck. No one from the gas station testified regarding the authenticity of the receipt.

**{31}** Insurer argues that admission of the receipt copy was error for three interrelated reasons: (1) there was no adequate foundation for admitting the document; (2) the document admitted was a copy, not the original; and (3) the document was hearsay not admissible under any exception.

**{32}** We agree with Insurer that the receipt was hearsay not admissible under any exception. The receipt was hearsay because it contained a statement offered in court to prove the truth of the matter asserted. *See* Rule 11-801(C) NMRA. The receipt, bearing Worker's signature, purported to state that he was at the gas station and bought fuel on the date indicated. *See, e.g.*, *People v. Maki*, 704 P.2d 743, 750-51 (Cal. 1985) (en banc) (holding that car rental and hotel receipts admitted to show defendant had violated probation by traveling out of area were hearsay not admissible under any exception, but also holding that the admission of such improper evidence did not violate the confrontation clause under the circumstances). The receipt does not qualify as a record of regularly conducted activity under Rule 11-803(F) NMRA because of the complete absence of "the testimony of the custodian or other qualified witness" as required by that rule. While Worker was not

9

qualified to testify as to the regular practice of the business, his testimony was consistent with the information purportedly conveyed by the receipt.

**{33}** We next consider the effect of the improper admission of the receipt. "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]" Rule 11-103(A) NMRA. "[W]e deem it noteworthy that this was a bench trial, and the general rule pertaining to that type of trial appears to give a judge more flexibility in making admissibility determinations than in jury trials." *Tartaglia v. Hodges*, 2000-NMCA-080, ¶ 30, 129 N.M. 497, 10 P.3d 176. "We presume that a judge is able to properly weigh the evidence, and thus the erroneous admission of evidence in a bench trial is harmless unless it appears that the judge must have relied upon the improper evidence in rendering a decision." *State v. Hernandez*, 1999-NMCA-105, ¶ 22, 127 N.M. 769, 987 P.2d 1156.

**{34}** While Judge Fuller noted Worker's testimony regarding the receipt in his findings, he also cited additional evidence that led him to conclude that an employment relationship existed. As discussed below, the evidence of employment included Worker's testimony regarding the circumstances of his hiring, a notation on a fax regarding hiring of a replacement for Worker, and the report of the accident that Employer filed with the Indiana WCA. Accordingly, the circumstances do not support a conclusion that Judge Fuller "must have relied upon the improper evidence in rendering a decision." *Id.*

**DENIAL OF MOTION FOR DIRECTED VERDICT**

**{35}** Insurer argues that Judge Fuller erred in denying Employer's motion for directed verdict, finding the existence of an employment relationship between Worker and Employer, and finding that Worker was in the course and scope of his employment at the time of the accident. "This being a nonjury trial, the motion for a directed verdict was, in effect, a motion to dismiss under [Rule 1-041(B) NMRA]." *Garcia v. Am. Furniture Co.*, 101 N.M. 785, 787, 689 P.2d 934, 936 (Ct. App. 1984). "In ruling on a Rule 1-041(B) motion, . . . the trial judge acts as a fact finder who weighs the evidence and passes judgment on whether the plaintiff has proved the necessary facts to warrant the relief asked." *Padilla v. RRA, Inc.*, 1997-NMCA-104, ¶ 17, 124 N.M. 111, 946 P.2d 1122 (internal quotation marks and citation omitted). We again review the whole record for evidence sufficient for a reasonable mind to accept as adequate to support the decision. *Tallman v. ABF (Arkansas Best Freight),* 108 N.M. 124, 128, 767 P.2d 363, 367 (Ct. App. 1988), *modified on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.3d 1148.

**{36}** Insurer argues that Judge Fuller, in finding that an employment relationship existed between Employer and Worker, relied too heavily on the report of injury that Employer filed with the Indiana WCA. In the case cited by Insurer, this Court concluded "[t]he filing of the report in the instant case is insufficient, *standing alone*, to support a legal conclusion that an employment relationship existed." *Jelso v. World Balloon Corp.*, 97 N.M. 164, 170, 637 P.2d 846, 852 (Ct. App. 1981) (emphasis added). Yet, Judge Fuller had evidence before him

10

in addition to the Indiana report. Worker testified that his former employer, T&R Trucking, had no work for him because its truck had broken down and that a T&R Trucking employee had suggested that Worker try to find work with Employer. Worker also testified that Chip Webb, Employer's manager, hired him to drive Employer's truck and instructed him to take it to a gas station and purchase fuel. Judge Fuller also cited a fax dated two days after the accident referring to Webb's efforts to find a replacement driver for Worker from another trucking company. We acknowledge that there was also evidence rendering the employment relationship somewhat uncertain, such as the absence of employment paperwork or any agreement as to wages. Reviewing the whole record, however, we are "satisfied that the evidence demonstrates the decision is reasonable." *Barela*, 116 N.M. at 579, 865 P.2d at 1223.

**{37}** Judge Fuller also had evidence before him that the accident took place in the course and scope of Worker's employment. Worker testified that he discovered defective lights while inspecting the truck in preparation for driving it to Santa Fe and was trying to get information on having them fixed from the forklift driver when he was injured. As Worker could not reasonably drive the truck with the defective lights, it was within the course and scope of his employment to seek information on fixing them.

**{38}** Accordingly, we conclude that Judge Fuller did not err in denying Employer's motion for directed verdict.

## CALCULATION OF AVERAGE WEEKLY WAGE

**{39}** Judge Stirling found that "[t]he only concrete evidence of a rate of pay for Worker is that provided on the accident report filed in Indiana." Based on the rate of fifty cents per driven mile stated in this report, the judge calculated that Worker would have earned $210 had he driven from Farmington to Santa Fe and back, and she used this figure as his average weekly wage.

**{40}** "[A]verage weekly wage" is defined as "the weekly wage earned by the worker at the time of the worker's injury[.]" NMSA 1978, § 52-1-20(A) (1990). Section 51-1-20 sets forth several methods for calculating a worker's average weekly wage. Worker argues that Judge Stirling should have used Section 52-1-20(B)(3), which provides:

> [I]f the hourly rate of earnings of the worker cannot be ascertained, or if the pay has not been designated for the work required, the average weekly wage, for the purpose of calculating compensation, shall be taken to be the average weekly wage for similar services performed by other workers in like employment for the past twenty-six weeks[.]

In his proposed findings of fact submitted to Judge Stirling, Worker used New Mexico Department of Labor statistics to arrive at a proposed average weekly wage of $425.67.

**{41}** Judge Stirling's order does not specify which section of the statute she used in arriving at $210. Given the unusual factual setting of Worker's employment, which does not readily fall under any of the other methods set forth in Section 52-1-20, it appears that she used the statute's fallback provision:

> [I]n any case where the foregoing methods of computing the average weekly wage of the employee by reason of the nature of the employment or the fact that the injured employee has been ill or in business for himself or where for any other reason the methods will not fairly compute the average weekly wage, in each particular case, computation of the average weekly wage of the employee in such other manner and by such other method as will be based upon the facts presented fairly determine such employee's average weekly wage[.]

Section 52-1-20(C).

**{42}** We are not persuaded that Section 52-1-20(B)(3) would provide the correct method, as Worker argues, in the present unusual circumstances. Given Worker's single day of employment, there is no basis for comparing Worker's job with any "similar services performed by other workers in like employment" under Section 52-1-20(B)(3)'s methodology. Further, Worker has not proposed any means of correlating a weekly or hourly rate with a per-mile rate under the statutory framework, nor is any apparent to us.

**{43}** We agree with Judge Stirling's characterization of the average weekly wage issue as "murky." In brief, the factual setting indicates that Worker was injured on the first day of employment and was not expected to be employed more than one day. We first conclude that the evidence, in the form of the accident report filed in Indiana, supported Judge Stirling's conclusion that Worker would have been paid $210 for the trip to Santa Fe. As he only expected to work that one day, the $210 would also have been his wages for the week. Using the statutory definition of average weekly wage–"the weekly wage earned by the worker at the time of . . . [his] injury"–it was reasonable for Judge Stirling to use the $210 figure, even though no mathematical averaging was necessary to arrive at that figure. Section 52-1-20(A).

**PAYMENT OF MEDICAL BILLS AND INTEREST**

**{44}** Our decision affirming the award of benefits to Worker without reduction disposes of Worker's issue regarding payment of his medical bills.

**{45}** Worker also argues that Judge Stirling should have awarded pre- and post-judgment interest and attorney fees. He claims that Judge Stirling did not rule on his motions for interest and fees because she believed she had lost jurisdiction over the case after the parties filed notices of appeal, while Insurer claims that the judge did not rule because Insurer had moved to stay further proceedings pending appeal and had posted a bond to secure the

12

compensation order. In either event, Judge Stirling ruled on neither the amount of attorney fees nor on the issue of pre- and post-judgment interest. Accordingly, we remand to the Workers' Compensation Administration for further proceedings on those matters.

**CONCLUSION**

{46}    For the reasons stated above, we affirm the award of full benefits to Worker and remand for consideration of his motions for attorney fees and interest.

{47}    **IT IS SO ORDERED.**

 

 

_____
       **RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**CELIA FOY CASTILLO, Judge**

**Topic Index for *Nelson v. Homier Distributing Co., Inc.*, No. 27,543**

| **AE** | **APPEAL AND ERROR** |
| AE-HE | Harmless Error |
| AE-RM | Remand |

| **CP** | **CIVIL PROCEDURE** |
| CP-LM | Limitation of Actions |

| **EV** | **EVIDENCE** |
| EV-HR | Hearsay Evidence |

| **ST** | **STATUTES** |
| ST-IP | Interpretation |

| **WC** | **WORKERS' COMPENSATION** |
| WC-AF | Attorney Fees |
| WC-CE | Course of Employment |
| WC-IN | Intoxication |