**Certiorari Granted, January 30, 2012, No. 33,372**

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2012-NMCA-015**

**Filing Date: December 6, 2011**

**Docket No. 28,508**

**CHERYL SCHULTZ on behalf of
KEVIN SCHULTZ (deceased),**

**Worker-Appellant,**

**v.**

**POJOAQUE TRIBAL POLICE
DEPARTMENT, and NEW MEXICO
MUTUAL CASUALTY COMPANY,**

**Employer/Insurer-Appellees.**

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Helen L. Stirling, Workers' Compensation Judge**

Law Offices of George Wright Weeth
George Wright Weeth
Albuquerque, NM

for Appellant

Riley, Shane & Keller, P.A.
Richard J. Shane
Kristin J. Dalton
Albuquerque, NM

for Appellees

## OPINION

**FRY, Judge.**

**{1}**     During a recreational church outing, Kevin Schultz (Worker) drowned while rescuing a child who had fallen into the Rio Grande near Pilar, New Mexico.  At the time of his death, Worker was an off-duty police officer with the Pojoaque Tribal Police Department (Employer).  Approximately fourteen months after Worker's death, his widow, Cheryl Schultz, filed a workers' compensation complaint for medical and survivor benefits against Employer and its insurer.  The Workers' Compensation Judge (WCJ) denied Mrs. Schultz's claims, determining that the complaint was barred by the statute of limitations and that, even if the complaint had been timely filed, Worker's death did not arise out of his employment.  We affirm that part of the WCJ's decision holding that Mrs. Schultz's complaint was not timely filed and is therefore barred by the statute of limitations pursuant to NMSA 1978, Section 52-1-31(B) (1987), of the New Mexico Workers' Compensation Act (the Act), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2007).  Given our disposition, we do not address whether Worker's death arose out of and in the course of his employment.

**BACKGROUND**

**{2}**     On August 17, 2002, Worker took the day off from his job as a police officer in order to accompany his church youth group as a chaperone on a recreational outing near Pilar, New Mexico.  Worker drove his personal vehicle to the outing.  During the outing, one of the children fell into the Rio Grande, and Worker died while rescuing the child.  An autopsy determined that the cause of Worker's death was drowning.  Worker's death occurred off tribal land.  Worker was not in uniform at the time of his death, but his badge, department-issued pager, and department-issued revolver were found in his possession.  Worker was survived by his wife and a minor son.

**{3}**     On October 1, 2003, nearly fourteen months after Worker's death, Mrs. Schultz filed a pro se workers' compensation complaint for medical and survivor benefits on behalf of her deceased husband against Employer and its insurer, New Mexico Mutual Insurance Company.  The complaint automatically entered into an internal mediation process pursuant to requirements of the Workers' Compensation Administration (WCA).  On December 19, 2003, the mediator issued a recommended resolution that the complaint be "dismissed without prejudice" so that Mrs. Schultz could seek attorney representation.  The recommended resolution also gave Mrs. Schultz leave to immediately file an amended complaint.  Specifically, the recommended resolution stated:

> [T]he Mediator asked the parties whether they were prepared to enter into settlement negotiations.  [Mrs. Schultz] stated that she would be consulting an attorney prior to making any decisions about settlement.  The Mediator recognizes that [Mrs. Schultz] has the right to have an attorney present at any stage in this case.  It is the Mediator's evaluation, however, that under the circumstances of this case, [Mrs. Schultz's] attorney should be present during settlement negotiations for her consultation.  *Therefore, the Mediator recommends that the complaint . . . be dismissed without prejudice. [Mrs. Schultz] may immediately file an amended complaint with the accompanying documents required by this Administration.*

(Emphasis added.) Neither party filed a notice of acceptance or rejection of the recommended resolution, and the WCA generated a Notice of Completion on February 13, 2004.

**{4}** On June 18, 2004, Mrs. Schultz, through her attorney, filed a second complaint for compensation benefits on behalf of Worker. The clerk's office at the WCA gave the second complaint the same case number as the first complaint and, in addition to the filing date, included a "reopened" stamped date of June 18, 2004. Although nearly identical to the first complaint filed in October 2003, the second complaint included the following additional request by Mrs. Schultz:

> [Mrs. Schultz] requests modification of the Recommended Resolution [dated] December 19, 2003[,] pursuant to [NMSA 1978,] Section 52-5-9 [1989,] for the reason that [Mrs. Schultz] has retained an attorney to represent her, the attorney will be available to consult with [Mrs. Schultz] during settlement negotiations, and it is no longer equitable that the recommended resolution ha[ve] prospective application.

**{5}** In 2007, after mediation proved unsuccessful, Mrs. Schultz's second complaint proceeded to a formal hearing before a WCJ. After a three-day hearing, the WCJ denied Mrs. Schultz's claims on two grounds. First, the WCJ determined that Mrs. Schultz's claims were barred because "[t]he statute of limitations ha[d] run without reasonable excuse or [without] misleading conduct on the part of Employer or Insurer." Second, the WCJ found that even if Mrs. Schultz's claims were not barred by the statute of limitations, "Worker's accident did not arise out of his employment with Employer" because his accident "was not within the course and scope of his employment, and was not caused by a risk incident to his employment."

**{6}** This appeal followed. We initially dismissed the appeal due to a late filing of the notice of appeal. The Supreme Court reversed and remanded for us to consider the merits of this appeal. *Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2010-NMSC-034, ¶ 25, 148 N.M. 692, 242 P.3d 259 (concluding that Mrs. Schultz's late filing of the appeal was excusable because it was due to an unanticipated mailing delay outside of her control).

**DISCUSSION**

**{7}** Mrs. Schultz raises two issues on appeal, arguing that the WCJ erred in determining that: (1) the statute of limitations barred her claims, and (2) Worker's death did not arise out of and in the course of his employment with Employer. Because we conclude that the statute of limitations issue is dispositive here, we do not address whether Worker's death arose out of his employment.

**1.     Statute of Limitations**

**{8}** Under the Act, the applicable statute of limitations provides:

3

> In case of the death of a worker who would have been entitled to receive compensation if death had not occurred, claim for compensation may be filed on behalf of his eligible dependents to recover compensation from the employer or his insurer. Payment may be received or claim filed by any person whom the director or the court may authorize or permit on behalf of the eligible beneficiaries. No claim shall be filed, however, to recover compensation benefits for the death of the worker unless he or someone on his behalf or on behalf of his eligible dependents has given notice in the manner and within the time required by Section 52-1-29 . . . and *unless the claim is filed within one year from the date of the worker's death*.

Section 52-1-31(B) (emphasis added). In this case, Worker's death occurred on August 17, 2002. The parties stipulated in a pre-trial order that Employer had actual notice of Worker's death and, thus, according to Section 52-1-31(B) of the Act, a claim for compensation benefits was required to be filed by August 17, 2003—which was one year from the date of Worker's death. Mrs. Schultz's first and second complaints were filed on October 1, 2003, and June 18, 2004, respectively. Although Mrs. Schultz acknowledged that both filing dates fell outside the one-year limitations period provided by Section 52-1-31(B), she argued at the formal hearing before the WCJ that her claim was timely filed because the statute of limitations was tolled for an additional time period that ultimately covered the filing of both complaints. The WCJ disagreed and entered a number of findings, concluding that there was no basis for tolling the statute of limitations.

**{9}** On appeal, Mrs. Schultz argues that the WCJ's determination was incorrect because the statute of limitations was tolled by two circumstances: (1) Employer's conduct, which lulled Mrs. Schultz into a false sense of security and caused her to believe workers' compensation would be paid under Section 52-1-36 of the Act, and (2) Employer's failure to timely file an accident report under Sections 52-1-58 and -59 of the Act.

**{10}** In reviewing the WCJ's factual findings, we apply whole record review. *DeWitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341. We view the evidence in the light most favorable to the decision, "but may not view favorable evidence with total disregard to contravening evidence." *Id.* (internal quotation marks and citation omitted). To the extent that Mrs. Schultz's arguments regarding the statute of limitations challenge the WCJ's factual findings, we must determine whether substantial evidence supports the findings. *Torres v. Plastech Corp.*, 1997-NMSC-053, ¶ 8, 124 N.M. 197, 947 P.2d 154. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). In addition, our review of the WCJ's interpretation of statutory requirements concerning the statute of limitations is subject to a de novo standard of review. *See DeWitt*, 2009-NMSC-032, ¶ 14; *see also Nelson v. Homier Distrib. Co.*, 2009-NMCA-125, ¶¶ 7, 11, 147 N.M. 318, 222 P.3d 690 (indicating that where facts relevant to a statute of limitations issue are not in dispute, the issue becomes a question of law to which we apply de novo review).

a.      **Accrual of the One-Year Limitations Period**

**{11}** As a preliminary matter, we clarify when the one-year limitations period began to accrue in this case. According to Section 52-1-31(B), a complaint for workers' compensation benefits must be filed "within one year from the date of the worker's death." Based on this statutory language, it is clear that the one-year time limit for bringing a claim for benefits begins to accrue on the date of the worker's death. At oral argument before this Court, Mrs. Schultz's counsel argued that the one-year limitations period in this case began running, not from the date of Worker's death, but from the date that Mrs. Schultz filed her first complaint on October 1, 2003. Mrs. Schultz's counsel argued that the filing date was the same date that Mrs. Schultz learned from the WCA ombudsman that Employer had not yet filed a claim on her behalf, and that, given Employer's conduct, the one-year limitations period began accruing from the filing date. Her counsel cited *Elsea v. Broome Furniture Co.*, 47 N.M. 356, 143 P.2d 572 (1943), as authority for this contention. Alternatively, Mrs. Schultz argued in her brief in chief that the one-year limitations period did not begin to accrue until October 27, 2003, the date that Employer filed a written accident report with the WCA.

**{12}** Neither of these arguments is persuasive. First, the language of Section 52-1-31(B) is clear that the one-year limitations period begins accruing from the date of a worker's death. We see nothing in the language of that subsection indicating that the running of the one-year limitations period may be delayed for the reasons given by counsel.

**{13}** Second, *Elsea* is not controlling. *Elsea* did not involve death benefits and instead concerned an injured worker filing a suit for benefits after the employer refused to pay compensation. 47 N.M. at 361-62, 143 P.2d at 575-76. In *Elsea*, the employer argued that the worker's claim was not timely filed, while the worker claimed that the employer's conduct misled him into delaying the filing of his claim. 47 N.M. at 366-67, 143 P.2d at 578. Our Supreme Court affirmed the fact finder's finding supporting the worker's view and further rejected the employer's alternative argument that, at minimum, a worker must file a claim within "a reasonable time after [the employer's] refusal" of the claim. 47 N.M. at 367-70, 143 P.2d at 578-80. We see nothing in *Elsea* suggesting that the limitations period begins to run at a time other than the date of the worker's death in a case involving an alleged work-related death. Thus, the one-year limitations period in this case began accruing on August 17, 2002—the date of Worker's death—and, absent any tolling, expired on August 17, 2003.

### b. The Operation of Tolling

**{14}** Before we consider Mrs. Schultz's specific arguments regarding the statute of limitations, we address how tolling of the statute of limitations would play out under the factual scenario presented in this case. Mrs. Schultz filed an initial untimely complaint for compensation benefits that was dismissed without prejudice through mediation and then, some months later, Mrs. Schultz filed a second complaint. Thus, if we were to determine that the late filing of the initial complaint was excused by Employer's conduct or by Employer's late filing of the accident report, we explain how tolling of the initial complaint would occur in the context of a later dismissal without prejudice and re-filing of a new complaint.

**{15}** Mrs. Schultz's initial complaint, filed on October 1, 2003, proceeded to mediation before a WCA mediator on December 19, 2003. This complaint was dismissed without prejudice as a result of the mediator's recommended resolution. The recommended resolution made no reference to any statute of limitations issue, nor did it address whether the initial October 1, 2003, filing date would be preserved by the filing of an amended complaint. Because neither party filed a notice of acceptance or rejection of the recommended resolution, we assume that the recommended resolution became binding on the parties by operation of law. *See* 11.4.4.10(D)(5)(a) NMAC (6/13/03); *see also* NMSA 1978, § 52-5-5(C) (1993) (stating that any party who fails to notify the director of the WCA of its acceptance or rejection of the recommended resolution becomes conclusively bound by the resolution). At the formal hearing, Mrs. Schultz's written pleadings and closing argument did not address what, if any, effect the dismissal without prejudice of the first complaint had on the second complaint.

**{16}** In relevant part, the WCJ's order concluded that: (1) "Mrs. Schultz'[s] original [c]omplaint was dismissed without prejudice"; (2) "the Recommended Resolution did not contain any language which preserved the original filing date for her"; and (3) "[w]hen a [c]omplaint is dismissed without prejudice it is as if the [c]omplaint were never filed; without saving language in the dismissal document, the statute of limitations continues to run."

**{17}** On appeal, Mrs. Schultz relies on *Ortega v. Shube*, an earlier case from this Court, to assert that the WCJ's conclusion was legally incorrect. 93 N.M. 584, 603 P.2d 323 (Ct. App. 1979), *overruled on other grounds by Bracken v. Yates Petroleum Corp.*, 107 N.M. 463, 760 P.2d 155 (1988). In *Ortega*, the plaintiffs brought an initial suit for workers' compensation benefits within the one-year statute of limitations period that was dismissed without prejudice for lack of jurisdiction. 93 N.M. at 585, 603 P.2d at 324. The plaintiffs later filed a second lawsuit, in which they relied on NMSA 1978, Section 37-1-14 (1880), to claim that the second action was a continuation of the previously dismissed lawsuit. *Ortega*, 93 N.M. at 585-86, 603 P.2d at 324-25; *see* § 37-1-14 (providing that commencement of a second suit within six months after the original suit fails is "deemed a continuation of the first"). The district court declined to apply Section 37-1-14 and dismissed the second action because the statute of limitations had run prior to the filing of the second lawsuit. *Ortega*, 93 N.M. at 585, 603 P.2d at 324. On appeal, this Court determined that because the Workers' Compensation Act specifically limits the commencement of an action to one year, Section 37-1-14 is inapplicable to workers' compensation lawsuits and cannot extend the one-year statutory time limit for filing a claim. *Ortega*, 93 N.M. at 586-87, 603 P.2d at 325-26. Because the plaintiffs brought the second lawsuit after the one-year time limit had elapsed, we determined that the district court properly dismissed the lawsuit. *Id.* at 587, 603 P.2d at 326.

**{18}** Of relevance to this case is the dissent in *Ortega* because it contains the approach that was later adopted by our Supreme Court, an approach that Mrs. Schultz appears to argue is applicable here. The *Ortega* dissent reasoned that the second lawsuit should not have been dismissed on statute of limitations grounds because the filing of the first action tolled the one-year limitations period during the pendency of that action. *Id.* at 588, 603 P.2d at 327 (Sutin, J., dissenting). The dissent determined that, once the first action was dismissed

6

without prejudice, the statute of limitations began running once again and the second action was filed during the time remaining in the limitations period, stating:

> The first claims were filed within the statutory period [on July 20, 1976]. When these claims were filed, the statutory period of limitation was tolled during their pendency since commencement of an action arrests the running of the applicable statutory period. When [the] plaintiffs' claims were dismissed without prejudice on December 23, 1976, they were not dismissed because the district court was without power to adjudicate the claims, but solely for the reason the claims were improperly stated and were joined with other common law claims and with one of products liability; that non-jury claims could not be joined with jury claims. The statutory period was tolled from July 20, 1976[,] to December 23, 1976, a period of five months thereafter. The claims filed on January 13, [1977,] were not untimely.

*Id.*

**{19}** In *Bracken*, our Supreme Court looked favorably on the dissent in *Ortega* and applied the dissent's reasoning to that case. *Bracken*, 107 N.M. at 464, 466, 760 P.2d at 156, 158. In *Bracken*, the worker's widow filed a claim for workers' compensation approximately twenty-seven days prior to the expiration of the one-year period of limitations. 107 N.M. at 463, 760 P.2d at 155. The district court dismissed the case for lack of venue and, on appeal, the plaintiff argued that the district court should have transferred the case to a court with proper venue. *Id.* Our Supreme Court did not address whether the case can be transferred from an improper venue and instead relied on the reasoning in the dissent in *Ortega*. *Bracken*, 107 N.M. at 464, 760 P.2d at 156. The Court determined that the statute of limitations was tolled by "the diligent filing of the complaint" in the improper venue and that, following dismissal for improper venue, the plaintiff could re-file the complaint in the proper venue. *Id.* at 466, 760 P.2d at 158. The Court instructed that "[u]pon entry of the final order on remand from this appeal, the plaintiff shall have the remainder of the one-year statute of limitations, twenty-seven days, more or less, in which to file her complaint in a proper venue." *Id.*

**{20}** We conclude that the reasoning in *Bracken* is applicable to this case. With the foregoing in mind, we turn to address Mrs. Schultz's arguments for tolling.

**c.      Section 52-1-36:  Employer's Conduct**

**{21}** Mrs. Schultz's primary argument for tolling of the statute of limitations in this case is that her late filing was excused under Section 52-1-36 based on Employer's conduct that led her to believe that compensation would be paid. Section 52-1-36 provides that the failure of a person, entitled to compensation under the Act, to timely file a claim shall not be a bar to compensation "where the failure was caused in whole or in part by the conduct of the employer or insurer which reasonably led the person entitled to compensation to believe the compensation would be paid." Section 52-1-36. The WCJ determined that Section 52-1-36 was inapplicable to this case because there was "[n]o conduct by Employer, in whole or in part, [that] led Mrs. Schultz to believe that compensation would be paid."

**{22}** The WCJ entered several findings of fact, which Mrs. Schultz does not appear to challenge on appeal, concerning the course of conduct between Employer and Mrs. Schultz regarding workers' compensation benefits in connection with Worker's death prior to October 1, 2003—the filing date for the first complaint. The WCJ found that in June 2003, approximately ten months after Worker's death and still within the one-year limitations period, Mrs. Schultz met with a financial advisor who first informed her that she might be entitled to receive workers' compensation benefits as a result of Worker's death. Prior to this meeting, Mrs. Schultz was unaware that she might be eligible for workers' compensation benefits, and Employer also had never raised the possibility of benefits with Mrs. Schultz. Later, on July 28, 2003, Mrs. Schultz and her financial advisor met with the Employer's police chief to discuss the availability of benefits. Mrs. Schultz testified that the police chief told her that "he would take care of getting the workers' compensation paperwork done." The police chief testified that the possibility of workers' compensation benefits had never occurred to him because Worker was off duty at the time of his death. The WCJ found that the police chief did not recall saying whether he would take care of filing the paperwork but that, when he was asked about Mrs. Schultz's testimony, he responded by saying that "'if she said that, it must be correct.'"

**{23}** The WCJ found that, following the meeting, Mrs. Schultz did not speak to Employer again regarding the paperwork, and she "evidently believed . . . that because Employer had done the paperwork necessary for her to receive . . . federal benefits [some months earlier], it would do so similarly for the workers' compensation benefits." In late September 2003, Mrs. Schultz became concerned that she had not yet received workers' compensation benefits, and she contacted the WCA on October 1, 2003. She learned from an ombudsman that Employer had not filed a claim on her behalf. She proceeded to file a pro se complaint on the same day, although the complaint was outside the one-year limitations period.

**{24}** Mrs. Schultz argues that the WCJ misapplied Section 52-1-36 to the facts of this case. She contends that the above facts indicate "that the course of conduct between [her and Employer] lulled her into a false sense of security that her claim would be paid" and caused her to delay in filing the complaint. As support, she cites to other jurisdictions which she claims have held that a worker's late filing is excused by an "employer's assurance that it would initiate a workers' compensation claim on the worker's behalf."

**{25}** There is authority supporting Mrs. Schultz's argument. Section 52-1-36 permits tolling when an employer's conduct reasonably leads the worker to believe that compensation will be paid. And Professor Larson's treatise on workers' compensation notes that

> [t]he most common type of case [for excusing lateness on the basis of employer fault] is that in which a claimant . . . contends that he or she was lulled into a sense of security by statements of [the] employer[,] or carrier representatives that the claimant "will be taken care of[,]" or that the claim has been filed[,] or that a claim will not be necessary because the worker would be paid compensation benefits in any event. When such facts are established by the evidence, the lateness of the claim has ordinarily been excused.

8

7 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 126.09[1] (2011) (footnote omitted); *see also id.* § 126.09D[1] n.1 (for cases cited therein). However, we need not decide whether Employer's conduct tolled the statute of limitations because, even if we assume without deciding that such tolling took place, it would not extend to cover the second complaint Mrs. Schultz filed.

**{26}** On July 28, 2003, the date Mrs. Schultz first met with Employer to discuss the possibility of workers' compensation benefits, there were still approximately twenty-one days left in the one-year limitations period, which was set to expire on August 17, 2003—one year from Worker's death. If Employer's representations at that meeting tolled the one-year limitations period, the tolling would have occurred from July 28, 2003, to October 1, 2003—the duration of time during which Mrs. Schultz believed, as a result of her meeting with Employer, that Employer would take care of the claim. This time period was approximately two months long and represents the tolling period. *See Owens v. Eddie Lu's Fine Apparel*, 95 N.M. 176, 178, 619 P.2d 852, 854 (Ct. App. 1980) (stating that "during the time the [employer] reasonably led the plaintiff to believe that compensation would be paid, the limitation period for filing a claim was tolled"), *abrogation on other grounds recognized Cole v. J.A. Drake Well Serv.*, 106 N.M. 484, 745 P.2d 392 (Ct. App. 1987). Once Mrs. Schultz filed the first complaint on October 1, 2003, the statute of limitations stopped running during the pendency of that action because the commencement of an action arrests the running of the applicable statutory time period. *See Bracken*, 107 N.M. at 466, 760 P.2d at 158; *see also City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 45, 150 N.M. 428, 260 P.3d 414 (citing *Bracken* and other cases for the general proposition that the filing of a complaint tolls the statute of limitations during the pendency of the action). After the first complaint was dismissed without prejudice and a notice of case completion was issued, Mrs. Schultz then had the remainder of the one-year statute of limitations, twenty-one days, in which to file her second complaint. Because some months elapsed before an attorney for Mrs. Schultz filed the second complaint, the statute of limitations expired. Thus, even if there was tolling as a result of Employer's conduct, the second filing still fell outside the one-year limitations period.

### d.     Sections 52-1-58, -59:  Employer's Late Filing of the Accident Report

**{27}** Mrs. Schultz next argues that the statute of limitations was tolled according to Sections 52-1-58 and -59, due to Employer's alleged late filing of the accident report. It appears that Mrs. Schultz did not preserve this argument for appellate review. In her opening and closing arguments during the formal hearing as well as in her requested findings of fact and conclusions of law, Mrs. Schultz did not raise any arguments based on Sections 52-1-58 and -59. Her only argument regarding the statute of limitations at the hearing was that Employer's conduct required tolling of the one-year limitations period according to Section 52-1-36. Because Mrs. Schultz did not make any arguments regarding Sections 52-1-58 and -59, the WCJ did not make any specific findings or conclusions on this basis. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"). However, even if we were to ignore the preservation issue, we conclude that Sections 52-1-58 and -59 do not provide a basis for us to determine that Mrs. Schultz's second complaint was timely filed.

**{28}** Section 52-1-58(A) requires an employer to file a written report of an accidental injury suffered by an employee during the course of employment with the director of the WCA within ten days of the injury or within ten days of notification to the employer of the injury. Section 52-1-59 addresses the consequences of an employer's late filing or failure to file the written accident report, as follows:

> No claim for compensation under the Workers' Compensation Act . . . as it now provides or as it may hereafter be amended, shall be barred prior to the filing of such report or within thirty days thereafter, but this section does not shorten the time now provided for filing claims with the director.

Based on our reading of Sections 52-1-58 and -59, a worker has one year from the date of injury/death to file a claim for workers' compensation unless the employer has failed to file the written accident report. Once the initial one-year limitations period has run, no claim for compensation will be barred as long as the claim is filed prior to the accident report. *See* § 52-1-59 ("No claim for compensation . . . shall be barred prior to the filing of such report[.]"). However, once the employer files the accident report, the worker is given only thirty days from that date to file his/her claim for compensation. *See id.* ("No claim for compensation . . . shall be barred prior to the filing of such report or within thirty days thereafter, but this section does not shorten the time now provided for filing claims[.]"). Our reading is consistent with prior cases holding that Section 52-1-59 tolls the statute of limitations for untimely filed workers' compensation claims where the employer has failed to file the written accident report. *See Nelson*, 2009-NMCA-125, ¶¶ 8-15 (determining that a workers' compensation claim, although filed seven months past the one-year limitations period, was not barred by the statute of limitations due to the employer's failure to file an accident report in New Mexico); *see also Herman v. Miners' Hosp.*, 111 N.M. 550, 556, 807 P.2d 734, 740 (1991) (stating that "Section 52-1-59 provides that the effect of a failure to file is that no claim for compensation is barred prior to the filing of the appropriate report" and then determining in that case that the late filing of a compensation claim almost two years after the worker's death was excused by the employer's failure to file the report).

**{29}** In this case, Mrs. Schultz filed her initial complaint on October 1, 2003, which was nearly a month before Employer filed the written accident report on October 27, 2003. Consistent with Section 52-1-59, her initial complaint was timely because it could not be barred until the accident report was filed. However, this does not solve the timeliness problem that ensued when the initial complaint was dismissed without prejudice. Once the dismissal occurred, Section 52-1-59 would no longer apply. Section 52-1-59 would have allowed Mrs. Schultz an additional thirty days from the date the accident report was filed within which to file her second complaint—to November 26, 2003. But because that date had already passed before the second complaint was filed, Mrs. Schultz was not entitled to any additional time upon dismissal of her initial complaint. We are aware of no authority suggesting that Mrs. Schultz would be entitled to a *second* thirty-day period under Section 52-1-59 upon dismissal of her initial complaint.

**e.      Relation Back to the Original Filing Date of the First Complaint**

10

**{30}** Mrs. Schultz makes a final argument for bringing the second complaint within the one-year limitations period. She contends that the recommended resolution issued by the mediator "intended to preserve [Mrs. Schultz]'s original filing [date of October 1, 2003,] and relate a subsequent complaint back to that date." She further argues that if this Court determines that the language of the mediation order is unclear and that it in fact "failed to preserve her rights," we should interpret the order to preserve her original filing date in order to accomplish the mediator's obvious intent.

**{31}** Mrs. Schultz did not make this argument before the WCJ. As a result, Employer was not given the opportunity to respond to it, and the WCJ had no chance to rule on the specific argument that Mrs. Schultz now makes. *See Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 38, 125 N.M. 748, 965 P.2d 332 (explaining that preservation serves the purposes of (1) allowing the trial court an opportunity to correct any errors, thereby avoiding the need for appeal; and (2) creating a record from which the appellate court can make informed decisions). However, even if we were to set aside the preservation issue, we are not persuaded by this argument for two reasons. First, Mrs. Schultz does not point to any language within the recommended resolution that suggests the mediator's intent was to preserve the original filing date. Second, our Supreme Court in *Bracken* expressly held that the general savings statute, Section 37-1-14, is not applicable in the workers' compensation context. *Bracken*, 107 N.M. at 465, 760 P.2d at 157. That statute deems a new suit begun within six months to be a continuation of a prior suit in which the plaintiff "fail[ed] therein for any cause." Section 37-1-14. The Court in *Bracken* stated that "Section 37-1-14 is made inapplicable by Section 37-1-17 to any action or suit limited by separate statute." *Bracken*, 107 N.M. at 465, 760 P.2d at 157. Therefore, this relation-back mechanism is unavailable to Mrs. Schultz, and she has not cited any other authority supporting her argument.

**{32}** We recognize that Mrs. Schultz's second complaint fails due to the technicality of the mediator's dismissal of her initial complaint without prejudice. We acknowledge that the mediation process in workers' compensation proceedings is not infallible and that there may be instances, such as here, where a recommended resolution drafted by a mediator can have unfortunate consequences for workers or their surviving dependents. This is perhaps why our Legislature has created mechanisms under the Workers' Compensation Administration Act by which a worker can reject, seek modification, or pursue a number of other actions with respect to recommended resolutions and compensation orders. *See* § 52-5-5(C) (allowing a party to accept or reject a recommended resolution within thirty days of receipt); *see also* § 52-5-9 (discussing procedures for modifying compensation orders); *Hidalgo v. Ribble Contracting*, 2008-NMSC-028, 144 N.M. 117, 184 P.3d 429 (addressing the relationship between Sections 52-5-5 and -9). Unfortunately, in this case, counsel for Mrs. Schultz did not argue that the recommended resolution, which dismissed her first complaint, was issued in error or that it should have been modified on any of the statutory grounds available to her. Mrs. Schultz also did not file a notice of acceptance or rejection of the recommended resolution. And, although her counsel included in the second complaint a request for modification of the recommended resolution pursuant to Section 52-5-9, there is no indication that counsel followed up on this request or that any argument was made at the formal hearing on the basis of Section 52-5-9. We are unable to discern any basis for overcoming the technical issues in this case in order to reach the merits.

**CONCLUSION**

**{33}** Based on the foregoing, we affirm the WCJ's determination that Mrs. Schultz's claim was barred by the statute of limitations.

**{34} IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**I CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

**JONATHAN B. SUTIN, Judge (specially concurring).**

**SUTIN, Judge (specially concurring).**

**{35}** I concur in the Majority Opinion (the Opinion), but do so with misgivings about the WCA process.

**{36}** As to the one-year limitations period, the Opinion assumes a two-month tolling from July 28, 2003, to October 1, 2003, Opinion ¶ 27; and then a stoppage based on the filing of the October 1, 2003, complaint, lasting until the case closure on February 13, 2004, Opinion ¶¶ 3, 27; or perhaps a stoppage until thirty days after Employer filed its accident report, Opinion ¶¶ 29-30. In any case, the Opinion affirms dismissal of Mrs. Schultz's case with prejudice because her second complaint, filed June 18, 2004, was outside even the most liberal view of the time deadline. I do not quarrel with the Opinion's time-deadline analysis. What moves me to specially concur is that the analysis is dependent on the premise that the mediator's recommended dismissal without prejudice, followed by the case closure upon Mrs. Schultz's failure to reject the recommended resolution, was appropriate and required the filing of an amended complaint within the one-year statute of limitations in Section 52-1-31(B). It is this process that I address, after first discussing the time-deadline issues.

**Two-Month Tolling**

**{37}** Based on whole-record review, I agree with a July 28, 2003, to October 1, 2003, two-month tolling period. Employer engaged in "such conduct as would 'in whole or in part' reasonably lead [Mrs. Schultz] to believe compensation would be paid." *Elsea*, 47 N.M. at 366-67, 143 P.2d at 579; *see* § 52-1-36. Approximately two months after Worker's death, in October 2002, Employer filed with the Office of Justice Programs, Bureau of Justice Assistance, United States Department of Justice, a Report of Public Safety Officer's Death, along with a Claim for Death Benefits by Mrs. Schultz. In April 2003, a Department of Justice benefits specialist prepared and signed a Public Safety Officers' Benefits Act Claim Determination stating that Worker was off duty at the time of his rescue effort, yet also

stating that Worker "died as a direct and proximate result of a personal injury sustained in the line of duty from drowning while attempting to rescue another person." This determination was approved by the chief of the Department of Justice's Benefits and Payments Division and the Department's Office of General Counsel concurred in the determination in June 2003. A total benefit of $259,038 was awarded. The Office of Justice Programs informed Mrs. Schultz by letter in June 2003 of the award.

**{38}** In June 2003, Mrs. Schultz met with a retired police officer who assisted Mrs. Schultz as her financial counselor and together, in July 2003, they met with the Employer's Police Chief in regard to workers' compensation. The Chief told Mrs. Schultz and the counselor that he would take care of getting the workers' compensation paperwork done. The Chief's testimony that the possibility of workers' compensation benefits had never occurred to him because Worker was off duty at the time of his death is not credible given Employer's earlier report and Mrs. Schultz's claim submitted to the Department of Justice and the Department's determination that the death resulted from "injury sustained in the line of duty" and given that Employer was aware that Mrs. Schultz received compensation based on the documents submitted to the Department.

**{39}** Also, on October 21, 2003, Employer wrote a letter to Mrs. Schultz stating, "Your husband, Kevin Schultz, died in the line of duty. The Pueblo of Pojoaque will do anything necessary for you to receive survivor's benefits, workmen's compensation or any other benefits available to you and your grieving family." Employer prepared its First Report of Injury on October 16, 2003, and the report was submitted to the WCA on October 27, 2003. One might reasonably infer from the report and letter that Employer was sufficiently aware in July 2003 of the possibility that Worker's death was compensable.

**The Remaining Time**

**{40}** Based on the mediator's recommended dismissal and the WCA case closure on February 13, 2004, the Opinion allows Mrs. Schultz twenty-one days from that case closure date within which to file the amended complaint mentioned in the recommended resolution. This set a drop-dead date of March 5, 2004. If there had been no dismissal by the mediator, there would have been no limitations issue save that of whether Employer reasonably led Mrs. Schultz to believe that compensation would, in whole or in part, be paid. Hence the significance of the question whether the recommended dismissal and its effect were appropriate and effective to trigger a requirement that Mrs. Schultz file an amended complaint within the limitations period, which as the Opinion analyzes it with tolling and stoppage times, was twenty-one days following the February 13, 2004, WCA case closure.

**Failure to File Accident Report**

**{41}** In regard to Employer's failure to file an accident report, the Opinion assumes, for the purpose of its analysis, that Employer had a duty to file an accident report much earlier than Mrs. Schultz's October 1, 2003, complaint. Op. ¶¶ 28-30. In my view, Employer had a duty under Section 52-1-58(A) to file its First Report of Accident within ten days of Worker's death or within ten days after Employer received notification of Worker's death. An employer has a duty to timely file the First Report of Accident and to send a copy of the

report to the injured worker. *Id.* The Employer's First Report of Injury or Illness "must be filed within [ten] days of knowledge of any alleged work-related injury or illness that results in more than [seven] days of lost work." NM WCA Form E1.2 (filing instructions) (available at http://www.workerscomp.state.nm.us./pdf/e1.pdf). The report "must be filed even if the employer disputes the worker's claim of work-related injury or illness." *Id.* "No claim for compensation . . . shall be barred prior to the filing of such report or within thirty days thereafter[.]" Section 52-1-59; *see Anaya v. City of Santa Fe*, 80 N.M. 54, 55, 56-57, 451 P.2d 303, 304, 305-06 (1969) (indicating that "barred" in what is now Section 52-1-59, formerly 1953 Comp., § 59-10-28, refers to the statute of limitations in workers' compensation cases).

**{42}** Employer's own standard operating procedures contemplated an off-duty officer acting in an emergency situation to save a life. And as earlier indicated, based on Employer's report and Mrs. Schultz's compensation claim submitted to the Department of Justice, the Department determined that Worker died in the line of duty. Employer acknowledged that Worker died in the line of duty in its letter to Mrs. Schultz. And Employer implicitly acknowledged that it was required to file its First Report of Accident when the Chief said he would take care of getting the workers' compensation paperwork finished and, as well, when Employer ultimately filed its report.

**{43}** No citation of authority is required for the knowledge in workers' compensation practice that, from time to time, employers contest a claim for compensation on the ground that a worker was not acting within the scope of employment at the time of injury. That defense to liability does not excuse an employer, such as Employer here, from ignoring its duty to file the first report of accident within ten days of learning of a worker's death. Employer not only had actual notice of Worker's death and the circumstances surrounding the death, Employer was on notice that Worker's action might fall within the scope of Employer's standard operating procedures and his duties as an officer and that his injury might fall within the purview of a work-related injury. *Cf. Herman*, 111 N.M. at 554, 556, 807 P.2d at 738, 740 (reversing the Court of Appeals, which had determined there was no evidence in the record that the defendant hospital "knew that the heart attack was caused by the decedent's employment" and holding that the evidence did support knowledge when the defendant knew of the heart attack, knew of the decedent's stressful schedule, and knew that the decedent had had an argument with one of the surgeons the day of the death (internal quotation marks omitted)). Thus, because Employer failed to file the report required under Section 52-1-58(A) until October 27, 2003, pursuant to Section 52-1-59, Mrs. Schultz had until October 27, 2003, at the earliest to file her complaint for compensation. Because she filed her original complaint with the WCA before that date, on October 1, 2003, that complaint was not barred by the limitations period in Section 52-1-31(B). *See Herman*, 111 N.M. at 556, 807 P.2d at 740 (holding a claim was not time barred when the employer had actual notice of an injury but failed to file the required report). A determination that Section 52-1-59 was inapplicable or irrelevant because Mrs. Schultz did not file her second complaint until June 2004 brings to the fore that the mediator's recommended dismissal was appropriate and effective to trigger a requirement that Mrs. Schultz file an amended complaint by November 26, 2003.

**Mrs. Schultz's Failures**

**{44}** I note here that Mrs. Schultz's original complaint was on the WCA's Workers' Compensation Complaint printed form. The mediator's recommended resolution stated that Mrs. Schultz could file an amended complaint. Mrs. Schultz's June 18, 2004, complaint that was filed by her legal counsel was typewritten using the format of the WCA's complaint form. I am unaware whether there exists a WCA form for or designating a complaint as an "amended complaint." Mrs. Schultz's June 18, 2004, complaint requested modification of the recommended resolution on the ground that Mrs. Schultz retained counsel who was available to consult with Mrs. Schultz during settlement negotiations. Her June 18, 2004, complaint asserted that "it is no longer equitable that the recommended resolution has prospective application." Nothing in the record or argument shows whether the June 18, 2004, complaint was or was not intended to be the amended complaint referred to in the recommended resolution. Indeed, from the statements in the June 18, 2004, complaint, one could reasonably infer that the complaint was intended as an amended complaint.

**{45}** Except as might be gleaned from what Mrs. Schultz stated in her June 18, 2004, complaint, however, Mrs. Schultz did not specifically raise any issue or mount an attack during the WCA proceedings as to the propriety of recommending a dismissal and of a resulting case closure. Mrs. Schultz did not before the WCJ specifically object to, or otherwise attack or develop a record to question, that process or its effect. Nor did she raise such an issue on appeal. These preservation failures cause me to concur in the Opinion. But I must comment on the WCA process here.

**{46}** Workers' compensation adjudications are part of a specialized statutory administrative system and process separate from our court system. Ombudsmen, mediators, and judges employed within the WCA are expected to be fully knowledgeable in regard to the statutes and rules governing reporting requirements, deadlines, and tolling provisions that may affect relief. Surely when it comes to a bar to any relief based on a time deadline, a mediator should raise and discuss that concern with someone in Mrs. Schultz's position. The WCA is not to be a trap for an unwary, pro se surviving spouse.

**{47}** It appears that on October 1, 2003, the date that Mrs. Schultz filed her original complaint, an ombudsman informed her that there existed an issue with regard to the statute of limitations and the complaint would be untimely. That warning was obviously based on the fact that October 1, 2003, fell outside of the one-year period following August 17, 2002, the date of Worker's death. The advice from the ombudsman is irrelevant here, however, because the Opinion assumes, and I agree, that the one-year period was tolled for the two-month period discussed earlier based on Employer's conduct.

**{48}** Several circumstances strike me as particularly disconcerting with respect to the WCA process. The mediation can result in a case closure and a bar to relief. Yet it is not reported. There exists no record of what was discussed. Interestingly, the mediator presumably did not think that Mrs. Schultz's October 1, 2003, complaint was untimely filed, given that he did not recommend dismissal based on the timeliness of the complaint (which dismissal would have been a dismissal with prejudice). Instead, the mediator recommended dismissal without prejudice because Mrs. Schultz did not want to continue with the mediation until she obtained counsel. Nothing in the record indicates whether the mediator ever explained or discussed with Mrs. Schultz why her timely complaint had to be dismissed

15

without prejudice instead of merely left in pending status until she obtained counsel; in fact, nothing in the record indicates that a dismissal procedure was required or proper. As well, nothing in the record indicates that the mediator explained or discussed with Mrs. Schultz whether she was confronted with a statute of limitations deadline within which to file the amended complaint or else she would lose her right to relief; how the time deadline would be established and play out; why she needed to "immediately" file an amended complaint; or why, upon obtaining a lawyer, the mediation would not simply continue under the timely filed original complaint. The mediator apparently did not refer Mrs. Schultz to an ombudsman with respect to these matters. I find it difficult to understand why at the close of the mediation Mrs. Schultz would, or should, have reasonably understood that the mediator's recommended resolution of dismissal would follow the course taken by the WCA and the WCJ. I understand that Mrs. Schultz appears to have taken too long to engage counsel and file another complaint, but delay could have, and likely should have, been resolved differently than through a limitations bar.

{49}     To advise a pro se surviving spouse with respect to these matters would not, in my view, violate the policy in the Act against favoring one party over the other as proscribed in NMSA 1978, Section 52-5-1 (1990). Under the peculiar circumstances here, where Mrs. Schultz did not want to continue to mediate without a lawyer present, I have difficulty understanding why the workers' compensation process could not, for one example, have accommodated her by, instead of a dismissal without prejudice and apparently without any explanation as to the effect of the dismissal, setting a definitive date for the continuation of the mediation and indicating in writing that Mrs. Schultz was required by then to have counsel present and that no further continuation would be granted.

{50}     Moreover, as I understand the process, a recommended resolution is to recommend a resolution of a *dispute* between the parties. Section 52-5-5(C); NMSA 1978, § 52-5-7(A) (1993); 11.4.4.10(C)(6)(a), (d) NMAC. The reason for the recommended dismissal, Mrs. Schultz's desire to have a lawyer at the mediation, did not resolve a *dispute*. No resolution was called for in terms of liability or amount of compensation. The recommended resolution leaves no suggestion that Mrs. Schultz's original complaint no longer served to stop the running of the statute of limitations. Indeed, upon the filing of Mrs. Schultz's June 18, 2004, complaint, the WCA "reopened" the case with the same case number. If time or delay in workers' compensation cases is a significant concern, could the mediator's recommended resolution not have set a definitive deadline for the filing of the amended complaint, and could Mrs. Schultz not have been told of the dire consequences if it were not timely filed? Further, given the anomalous, counterintuitive process employed here, under the particular circumstances, would it not make sense to consider the June 18, 2004, complaint as relating back to the date of filing of the original complaint if it is shown that Employer would not be prejudiced?

{51}     Unfortunately, this Court is constrained by the failures of Mrs. Schultz to develop and argue throughout the administrative proceedings what seem to me to be critical facts, processes, and issues. Unfortunate because, but for the lack of preservation, this case appears classifiable as the height of procedural anomaly. *See Bracken*, 107 N.M. at 465, 760 P.2d at 157 (criticizing "procedural anomalies").

**{52}**    As I earlier indicated, based on its technical correctness, I am constrained to concur in the Opinion.  That constraint does not, however, prevent questioning whether the workers' compensation system and process should work in the fashion seen here.  And to deepen the concern, I think that Mrs. Schultz's compensation claim stated a claim deserving of a trial on the merits.

_____

**JONATHAN B. SUTIN, Judge**

**Topic Index for *Schultz v. Pojoaque Tribal Police Dept.*, No. 28,508**

| **WC** | **WORKERS COMPENSATION** |
|--------|--------------------------|
| WC-DB  | Death Benefits           |
| WC-SE  | Scope of Employment      |
| WC-TL  | Time Limitations         |